**Joe Alfred IZEN Jr., Appellant,**

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 01–07–01114–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 28, 2010.

Rehearing En Banc Overruled Sept. 10, 2010.

310

Joe A. Izen Jr., Bellaire, TX, for Appellant.

Cynthia Canfield Hamilton, Senior Appellate Counsel, Linda A. Acevedo, Office of the Chief Disciplinary Counsel, Austin, TX, Shannon B. Sauceda, Timothy R. Bersch, Houston, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

ELSA ALCALA, Justice.

This appeal concerns a telephone book advertisement and two website advertisements by a Texas attorney, appellant, Joe Alfred Izen Jr., who was prosecuted by the appellee, the Commission for Lawyer Discipline (the "Commission"). Izen appeals the judgment that suspends his license to practice law, probated for 24 months, for various violations of the Texas Disciplinary Rules of Professional Conduct (hereafter, "the Rules"). In six issues challenging the jury's verdict and the trial court's judgment, Izen contends the evidence is legally and factually insufficient; his due process rights were violated; there is a conflict in the jury's answers; the trial court erred in its evidentiary rulings; the trial court erred in its instructions to the jury; and the trial court erred by allowing the jury to deliberate when the judge was outside of Harris County. We conclude that Izen's due process rights were not violated by the Commission's prosecution of the violations of the Rules by the websites and that those violations are each independent grounds sufficient to uphold the judgment. We also conclude that the remainder of Izen's complaints are either waived or are alternative grounds that are unnecessary to support the judgment. We affirm.

## Background

Izen, an attorney licensed to practice in Texas, employed Joe D. Sanchez, who was not an attorney. Izen placed three advertisements. One was an advertisement that appeared in a Brady, Texas telephone directory and two were websites. In describing the background of this case, we discuss (A) a description of the three advertisements, (B) the Committee's administrative action, (C) the jury trial, and (D) the post-verdict motions filed by Izen.

### A. The Three Advertisements

Izen placed an advertisement that appeared in a Brady, Texas telephone directory. The advertisement's size was one-half page. It stated, "Texas Legal Services Clinic. Divorce $79.00." The advertisement also listed the areas of wills, probate, bankruptcy, "workmans comp.," personal injury, criminal law, and family law. Izen was listed as a "staff attorney" and Joe D. Sanchez was identified as an "associate." In addition to listing a telephone number, the advertisement stated, "Not Certified by the Texas Board of Legal Specialization."

Izen also had a website called www.joeizen.com. It stated,

> Joe A. Izen Jr. is considered by many of his clients to be a highly proficient attorney with few peers in the legal profession when it comes to a committed defense of those he represents. Izen has been licensed over 20 years and is the lead attorney for many of the more difficult cases. His practice has grown rapidly across the nation and even into other countries such as Belize, where he stopped the SEC from illegally obtaining records of a resident trust company.

He has won numerous battles with the IRS. It can be our hope that we not only can win many more important battles against abusive government agencies, but that we can be part of the reform efforts of some of these agencies in order to bring them back into their proper role of public servants which will then gain back public acceptance.

. . . .

Licensed in Texas—Not Certified by the Texas Board of Legal· Specialization. Licensed to practice before the Texas Supreme Court[.] Federally licensed to practice in the U.S. District Courts of the Eastern, Western, Northern and Southern Districts of Texas, Eastern and Western Districts of Arkansas. Also licensed at the appellate level to practice before the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eight[h], Ninth, Tenth, Eleventh, District of Columbia and Federal Circuits, the U.S. Tax Court, the U.S. Court of Claims, U.S. Court of Military Appeals and the United States Supreme Court.

Izen also advertised in another website, www.divorceintexas.net. In pertinent part, that website stated,

Texas Legal Service Clinic—Divorce in Texas Made Easy

Self Help Divorce Packages STARTING At *$12.50*

1,000s of satisfied clients throughout Texas!!! Unbelievably low prices!!!

. . . .

Texas Legal Services Clinic (TLSC) is the trade name for the Law Offices of Joe Alfred Izen, Jr., an attorney licensed to practice law for over 20 years and gained considerable experience in all areas of the law.

None of these advertisements were filed with the Advertising Review Committee (hereafter "the Committee") before their dissemination.

**B. The Committee's Administrative Action**

Following dissemination of the three advertisements, the Committee sent a letter to Izen in January 2003 concerning the Brady advertisement. The letter told Izen that the dissemination of the Brady advertisement violated Part 7 of the Rules because it was not filed with the Committee before its dissemination. The letter also informed Izen that he had 20 days to administratively resolve the violations of Part 7 by filing the advertisement, and paying filing and late-filing fees. The offer of an administrative resolution concerned the Part 7 violations by the Brady advertisement only. A copy of the Brady advertisement was attached to the Committee's letter.

In response to the Committee's letter, Izen submitted an application for review of the Brady advertisement, along with the $300 filing fee, and a copy of the Brady advertisement. Izen did not mention either www.joeizen.com or www. divorceintexas.net in anything he filed with the Committee. The form application sent by Izen had a section to identify the "Nature of advertisement or written solicitation" made the subject of the application. Izen put an "X" in the blank next to "Telephone Directory" and did not mark the blank next to "Other (billboards, websites, etc.)" or indicate any website's URL address in the space indicated on the form. The only mention concerning any internet-related item in Izen's response to the Committee appears in the portion concerning his contact information. This section contains blanks for the applicant to fill in information such as "Lawyer," "Bar Card #," "Firm," "Firm's Principal Office Address," "Phone," "Fax," and "E-mail." In

the blank following the term "E-mail," Izen wrote "joeizen@joeizen.com."

The Committee did not administratively resolve any of Izen's violations. The Committee referred the violations in the Brady advertisement, as well as violations it discovered concerning the two websites, to the Commission. The Commission filed a petition in district court.

### C. The Jury Trial

The case was tried before a jury and presided over by Judge Jean Boyd, who was appointed by the Texas Supreme Court. *See* TEX.R. DISCIPLINARY P. 3.02, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 2005) (providing for appointment of active district judge who does not reside in Administrative Judicial District in which respondent resides). After the close of evidence, the jury began deliberating on Wednesday, September 12, 2007. At the end of that day, the jury was instructed to return to court at 10 a.m. the next morning, although there was concern that "a huge storm, perhaps a hurricane" was approaching Houston. The trial court judge, who was not from the area, left Harris County. The storm, however, was not as bad as anticipated and the jury appeared in court the next day. Sometime during the morning, the jury sent a question to the judge. The judge did not answer the question but instead instructed the bailiff to tell the jury to go home and return the next morning, Friday, September 14. The judge returned to court Friday morning, answered the jury's question, and, later that day, received the jury's verdict.

The jury was asked 12 questions concerning possible violations of the Rules.[1]

The jury found for Izen and against him on certain questions concerning (1) the Brady advertisement, (2) the www. divorceintexas.net website, and (3) the www.joeizen.com website.

### 1. The Brady Advertisement

Concerning the Brady advertisement, the jury found in favor of the Commission, as follows:

● Question 1 determined that Izen practiced under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under such name [Rule 7.01(a) ];

● Question 2 determined that Izen advertised in the public media or sought professional employment by written communication under a trade or fictitious name [Rule 7.01(e) ];

● Question 5 determined that Izen made a false or misleading communication that is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violated these rules or other law [Rule 7.01(a)(2) ];

● Question 8 determined that Izen failed to disclose the geographic location of the principal office or days and times that a lawyer will be present or that meetings will be by appointment only [Rule 7.04(j) ];

● Question 9 determined that Izen "failed to file with the Lawyer Advertisement and Solicitation Review Committee of the State Bar of Texas, either before or concurrently with the advertisements that he placed and failed to

---

**1.** *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 5.03(b)(1), 7.01(a), 7.01(e), 7.02(a), 7.02(a)(2), 7.04(b)(3), 7.04(j), 7.07(b), and 7.04(e), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005). The Rules cited are those in effect at the time of Izen's violations. The Rules have since been amended. For clarity and consistency, we refer to the former Rules as cited by the parties and recited in the judgment.

file a copy of each advertisement in the public media with the Lawyer Advertisement and Solicitation Review Committee of the State Bar of Texas" [Rule 7.07(b) ];

● Question 11 determined that Izen ordered, encouraged, or permitted Joe Sanchez to place the advertisement [Rule 5.03(b)(1) ]; and

● Question 12 determined that Izen failed to review and approve in writing the advertisement [Rule 7.04(e) ].

The jury found in favor of Izen in five questions concerning the Brady advertisement. Specifically, the jury found in favor of Izen on the following:

● Question 3 determined the evidence failed to show that Izen made a false or misleading communication of the identity, qualifications or services of any lawyer or the firm in the advertisement [Rule 7.02(a) ];

● Question 4 determined that the evidence failed to show that Izen made a communication that contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading in the advertisement he placed [Rule 7.02(a)(1) ];

● Questions 6 determined the evidence failed to show that Izen violated the Rule prohibiting statements comparing his services with other attorneys [Rule 7.02(a)(3) ];

● Question 7 determined that the evidence failed to show Izen violated the Rule requiring a disclaimer that he is not certified by the Texas Board of Legal Specialization [Rule 7.04(b)(3) ]; and

● Question 10 determined that the evidence failed to show that Izen violated the Rule that he reasonably supervise Joe Sanchez, a nonlawyer member of his firm [Rule 5.03(a) ].

### 2. The Website "www.divorceintexas.net"

The jury found in favor of the Commission concerning www.divorceintexas.net, as follows:

● Question 1 determined that Izen practiced under a misleading trade name [Rule 7.01(a) ];

● Question 2 determined that Izen advertised under a misleading or fictitious trade name [7.01(e) ];

● Question 7 determined that Izen did not conspicuously state he was not certified by the Texas Board of Legal Specialization [Rule 7.04(b)(3) ];

● Question 8 determined that Izen failed to disclose the days and times he would be at a geographic location [Rule 7.04(j) ]; and

● Question 9 determined that Izen failed to file the advertisement with the Committee before or concurrently with its dissemination [Rule 7.07(b) ].

Like the Brady advertisement, the jury found in favor of Izen concerning Questions 3, 4, and 6. The jury, however, also found in favor of Izen in Question 5 where it determined the evidence failed to show he made a false or misleading communication about the results the lawyer could achieve.

### 3. The Website "www.joeizen.com"

Concerning the website www.joeizen.com, the jury found in favor of the Commission, as follows:

● Question 3 determined that Izen made a false or misleading communication of the identity, qualifications or services of any lawyer or the firm in the advertisements that he placed [Rule 7.02(a) ]; and

● Question 9 determined that Izen "failed to file with the Lawyer Adver-

tisement and Solicitation Review Committee of the State Bar of Texas, either before or concurrently with the advertisements that he placed and failed to file a copy of each advertisement in the public media with the Lawyer Advertisement and Solicitation Review Committee of the State Bar of Texas" [Rule 7.04(b)(3) ].

Like the Brady advertisement, the jury found in favor of Izen in Questions 4 and 6. The jury, however, also found in favor of Izen in Question 5.

### D. The Post-verdict Motions

After the jury was discharged, Izen filed a motion for new trial and "Motion to Disregard Verdict of Jury on Certain Special Issues, Renewed Motion for Directed Verdict and Motion to Enter Judgment." In this motion, Izen challenged the legal and factual sufficiency of the evidence to support the jury's findings. Izen also identified several jury answers that he contends conflict with one another. The judge did not sign an order denying any of these motions, so they were overruled by operation of law. *See* Tex.R. Civ. P. 329b(c). The judgment specifically recites that the jury found violations of Rules 7.01(a), 7.01(e), 7.02(a), 7.02(a)(2), 7.04(b)(3), 7.04(j), 7.07(b), 7.04(e), and 5.03(b)(1), and states, "The Court further finds and concludes that the proper discipline of Respondent for each act of professional misconduct as found in this cases is suspension from the practice of law."

### Due Process

In his first issue, Izen contends the judgment of the trial court should be reversed and judgment rendered in his favor "based on the State Bar Advertising Review Committee and the Commission for Lawyer Discipline's violation of their own rules and regulations[,] administrative due process[,] and failure to exhaust administrative remedies." Although he broadly states his issue, Izen's sole complaint concerns his argument that the Committee did not abide by the representations it made in the January 2003 letter. Izen contends that the Committee, by sending him the letter and accepting his late-filing fee, created a right for Izen to have any problems with the Brady advertisement resolved administratively and that the Committee's failure to do so was a denial of due process. Izen asserts the letter from the Committee creates his entitlement to "an initial effort to handle violations administratively before reporting an attorney to the grievance system." Izen contends the letter is a mutually explicit understanding to reach "informal resolution of any [c]omplaint concerning Izen's ads, without a filing of a formal grievance" or "resolve any potential grievance informally." Specifically, Izen states, "The Committee failed to follow the very procedures which it outlined in its letters [sic]: (1) pay a fee, (2) apply for a review of the ad, and (3) resolve any potential grievance informally."

### A. Due Process Through Notification of Charges

Disbarment proceedings impose a punishment or penalty on a lawyer and, therefore, a lawyer is "entitled to due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968). Due process, including notice of the charges, is required "in any proceeding which is to be accorded finality." *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988). Due process, however, is not implicated by a grievance committee investigation because it is not accorded finality; the lawyer has a right to respond to charges either before an evidentiary panel of the grievance committee or at trial in district

court. *Weiss v. Comm'n for Lawyer Discipline*, 981 S.W.2d 8, 13 (Tex.App.-San Antonio 1998, pet. denied); *see Minnick v. State Bar of Tex.*, 790 S.W.2d 87, 90 (Tex. App.-Austin 1990, writ denied) (grievance committee proceeding not final because lawyer had right to de novo trial in district court); *Sims v. Comm'n for Lawyer Discipline*, No. 34229, 2006 WL 6242395, at *5 (Tex. Bd. Disciplinary Appeals June 8, 2006) (lawyer not entitled to due process during initial investigation by grievance committee because no discipline can be imposed until lawyer given notice and opportunity to choose between evidentiary panel and trial in district court).

In *Ruffalo,* the Supreme Court held that the due process rights of Ruffalo, an attorney, were violated by lack of notice of the disciplinary charges that had been filed against him by the Ohio Board of Commissioners on Grievance and Discipline. *In re Ruffalo*, 390 U.S. at 551, 88 S.Ct. at 1226. The Board charged Ruffalo with 12 specific alleged acts of misconduct. *Id.* at 546, 88 S.Ct. at 1223–24. After the adversarial proceeding had begun, Ruffalo and an investigator he employed in his practice testified. *Id.,* 88 S.Ct. at 1224. Based on the testimony of Ruffalo and the investigator, the Board added a thirteenth charge against Ruffalo. *Id.,* 88 S.Ct. at 1224. The Board found Ruffalo guilty of seven acts of misconduct, including the thirteenth charged act that had been added after the proceeding against him had commenced. *Id.* at 547, 88 S.Ct. at 1224. The Supreme Court of Ohio found the evidence sufficient to sustain only two of the charges, one of them being the thirteenth charge. *Id.,* 88 S.Ct. at 1224. After the completion of the state proceedings, the federal court of appeals ordered Ruffalo to show cause why he should not be disbarred from practice in that court. *Id.* at 545, 88 S.Ct. at 1223. The majority of the court of appeals found that Ruffalo's con-

duct, as alleged in the thirteenth charge, justified disbarring Ruffalo. *Id.* at 545, 547, 88 S.Ct. at 1223, 1224.

Izen does not present a *Ruffalo*-type-due-process challenge premised on adequate notice of the allegations, but instead focuses solely on the due process he was entitled to based on his formation of a contract with the Committee. *Compare id.* Izen's due process challenge in the trial court and in this Court is limited to the failure of the Committee to comply with the representations contained in the January 2003 letter concerning the Brady advertisement; Izen does not assert any other due process challenge either in the trial court or in this Court. We conclude Izen has not presented any due process challenge other than the assertion of a contract with the Committee concerning the Brady advertisement only.

**B. Due Process by Formation of Contract**

Izen contends that the January 2003 letter was a contract between him and the Committee that entitled him to the due process described in the letter, which he believed meant an administrative review of the Brady advertisement.

**1. Applicable Law**

■■ For a due process claim premised on the formation of a contract, the plaintiff must assert a property interest that is protected by the Fourteenth Amendment of the United States Constitution or article I, section 19 of the Texas Constitution. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) (noting "due process appl[ies] only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property"); *see also Concerned Cmty. Involved Dev., Inc. v. City of Hous-*

*ton,* 209 S.W.3d 666, 671 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) ("The Due Process Clause is only activated when there is some substantial liberty or property interest which is deserving of procedural protections."). "To have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Nat'l Collegiate Athletic Ass'n v. Yeo,* 171 S.W.3d 863, 870 n. 19 (Tex.2005) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2701).

■■■■ A person's property interest may arise from "such rules or mutually explicit understandings that support his claim of entitlement." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). A mutually explicit understanding can be supported by a written contract or an implied contract. *Id.* at 601–02, 92 S.Ct. at 2699–2700; *see also Johnson v. Sw. Miss. Reg'l Med. Ctr.,* 878 F.2d 856, 858 (5th Cir.1989) (stating property interest "may be created directly by state statute or by a written contract, or by a 'mutually explicit understanding' enforceable under state law as an implied contract").

■■■■ Whether express or implied, "[p]arties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Williams v. Unifund CCR Partners Assignee of Citibank,* 264 S.W.3d 231, 236 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (citing *Winchek v. Am. Express Travel Related Servs. Co.,* 232 S.W.3d 197, 202 (Tex.App.-Houston [1st Dist.] 2007, no pet.)). " 'Meeting of the minds' describes the mutual understanding and assent to the agreement re-garding the subject matter and the essential terms of the contract." *City of The Colony v. N. Tex. Mun. Water Dist.,* 272 S.W.3d 699, 720 (Tex.App.-Fort Worth 2008, pet. denied).

### 2. Analysis of Letter's Reference to Brady Advertisement

In its entirety, the January 2003 letter from the Committee to Izen concerning the Brady advertisement stated,

Dear Joe Alfred Izen, Jr:

It has come to the attention of the staff of the Advertising Review Department that you or your firm has disseminated either a public media advertisement or a written solicitation communication in violation of Part 7 of the Texas Disciplinary Rules of Professional conduct. *A copy of the ad or writing in question is attached.*

Section 7.07 of the Texas Disciplinary Rules of Professional Conduct outlines the filing requirements for advertisements and written solicitations. Most ads and written solicitations are required by Rules 7.07(a) or (b) to be filed with the Advertising Review Committee upon first dissemination. There are certain exemptions to these filing requirements which are delineated in Rule 7.07(d). Ads and writings <u>exempt</u> under 7.07(d) do not have to be filed but still must comply with all other applicable provisions of Part 7. Ads and writings <u>not exempt</u> under 7.07(d) must meet the filing requirements of 7.07(a) or (b) and must also comply with all other applicable provisions of Part 7. Please note that if an ad or writing is non-exempt, the failure to file such ad or writing with the Committee is a violation of the advertising rules even if the ad or writing complies with the rules in all other respects. (Also, please note that any change in the text of a previously filed

advertisement or written solicitation letter necessitates a new filing; therefore, if you believe that you have previously filed and received an approval on this material, you should check to ensure that the attached is <u>exactly</u> the same as your previously approved material. If it is, you should contact me immediately with the file number under which the material was previously approved.)

The Committee can report to the appropriate grievance committee any lawyer whom it finds has disseminated an advertisement or writing that *violates <u>any</u>* *<u>portion</u> of Part 7.* However, *in an initial effort to handle violations administratively before reporting an attorney to the grievance system,* the Committee will allow you one opportunity to submit your advertisement or written solicitation *for review at this time.* Within twenty (20) days of your receipt of this letter, *you are requested to file the attached ad or writing* with the Advertising Review Department.

An advertisement or written solicitation can only be filed in the form of an official application packet which includes: a copy of the ad or writing, a completed application form, and a $75.00 filing fee. In addition, there is a late filing fee of $225.00 assessed to each advertisement or written solicitation letter that is not timely filed as required by Rule 7.07(a) or (b) but rather is filed in response to a certified letter from the Advertising Review Committee. **Therefore, in order for us to accept your application packet for filing, it must be accompanied by a $75.00 standard filing fee and a $225.00 late filing fee for a total of $300.00.** These fees should be combined into one check. Each ad or writing must be filed separately. Written solicitations must be accompanied by a sample copy of the envelope in which they are to be mailed.

Television or radio commercials must include both a copy of the ad on video or audio tape *and* a detailed production script. The rules, filing requirements, and application form were published in the June 1995 issue of the Texas Bar Journal. As an accommodation to you, an application form has been enclosed. You may also access these rules and download the application form at **www. texasbar.com/members/license/ adreview/adreview.asp.**

*If your completed application packet is* *not <u>received in this office</u> by the twentieth (20th) day following the date of your receipt of this letter, the Committee will forward this matter to the appropriate grievance committee for disciplinary action.* It is <u>absolutely essential</u> that you include your unique file number (referenced above) on <u>all</u> correspondence pertaining to this matter. The inclusion of this number will allow us to accurately remove your file from those pending disciplinary action. Thank you for your cooperation.

(Bold and underlined text in original and italics added for emphasis).

The Committee's letter shows that, in exchange for payment of the filing fee and the late-filing fee by Izen, it would administratively review the violation of the Rules concerning Izen's failure to file the Brady advertisement before or concurrently with the advertisement's dissemination, which was the violation described by Rule 7.07(b). The letter commingles its discussion of all the Part 7 violations that may be in the Brady advertisement. The letter explains that for the Brady advertisement to be in compliance with the Rules it needed to have been filed with the Committee before or concurrently with its dissemination, and it needed to comply "with the rules in all other respects." The letter then explains that the Committee "can re-

port any lawyer who it finds has disseminated an advertisement or writing that violates *any portion* of Part 7." The letter then offers "to handle violations administratively" if Izen sends in the attached Brady advertisement with his official application packet, filing fee, and late fee. The letter says Izen has "one opportunity" to submit his advertisement "for review at this time."

Assuming Izen is correct that the Committee offered him an administrative resolution of all violations of Part 7 of the Rules concerning the Brady advertisement, and that he accepted that offer by mailing the advertisement to the Committee and paying the filing fees and late fees, the Committee was bound to that agreement. *See Perry,* 408 U.S. at 601–02, 92 S.Ct. at 2699–2700. The jury found the Brady advertisement violated various portions of Part 7 in its answers to Questions 1, 2, 5, 8, and 12, and we assume the trial court erred to the extent that it included those violations as part of its judgment. *See Univ. of Tex. Med. Sch. v. Than,* 901 S.W.2d 926, 933 (Tex.1995).

 Having assumed that Izen had a due process interest in administratively resolving the Rule 7 violations caused by the Brady advertisement, we must determine the proper remedy. Izen simply asserts, without analysis or citation to any authority, "The [trial court's] judgment should be reversed and judgment should be rendered in Izen's favor dismissing all counts of the disciplinary complaint." "In general, however, the remedy for denial of due process is due process." *Univ. of Tex. Med. Sch.,* 901 S.W.2d at 933. Here, assuming Izen was not afforded the administrative process in the letter, the Committee should not have referred his Part 7 violations from the Brady advertisement to the Commission, and the Commission should not have filed a charge of miscon-

duct based on those violations. The appropriate remedy for that violation is reversal of the trial court's judgment to the extent it is based on Part 7 violations from the Brady advertisement. *See id.* Izen, however, is not entitled to dismissal of all the violations in the judgment if there are violations of the Rules unrelated to the Part 7 violations by the Brady advertisement. *See Ibarra v. Housing Authority,* 791 S.W.2d 224, 226 (Tex.App.-Corpus Christi 1990, writ denied). To prevail in this appeal, Izen must show that each independent basis for the judgment is erroneous. *See Cluck v. Comm'n for Lawyer Discipline,* 214 S.W.3d 736, 739 (Tex.App.-Austin 2007, no pet.) ("The violation of one disciplinary rule is sufficient to support a finding of professional misconduct."); *see also Britton v. Tex. Dep't of Criminal Justice,* 95 S.W.3d 676, 681 (Tex. App.-Houston [1st Dist.] 2002, no pet.) ("[W]hen independent jury findings fully support a judgment, an appellant must attack each independent jury finding to obtain a reversal.").

### 3. The Rule 5.03 Brady Advertisement Violation and the Two Websites

 Excluding the Part 7 violations from the Brady advertisement, the judgment can be upheld by the Rule 5.03 violations from the Brady advertisement, as well as the multiple violations of the Rules by the two websites. Izen's due process rights were not violated by the inclusion of the Rule 5.03 violation by the Brady advertisement because only the Part 7 violations for that advertisement were mentioned in the letter. In Question 11, the jury determined Izen violated Rule 5.03(b)(1) because he ordered, encouraged, or permitted Joe Sanchez to place the Brady advertisement. Because only Part 7 of the Rules was mentioned in the letter, the trial court's judgment properly includ-

ed the Rule 5.03 violation for the Brady advertisement. *See Ibarra,* 791 S.W.2d at 226 (reversing portion of judgment obtained in violation of due process violation but affirming portion that did not violate due process).

Similarly, the judgment properly included the violations by the websites because they were not mentioned in the communications between the Commission and Izen. The Committee's letter specified, "A copy of the ad or writing in question is attached." A copy of the Brady advertisement was attached. The Committee never mentioned www.joeizen.com or www.divorceintexas.net. The Committee expressly stated,

> In addition, there is a late filing fee of $225.00 assessed to **each** advertisement or written solicitation letter that is not timely filed as required by Rule 7.07(a) or (b) but rather is filed in response to a certified letter from the Advertising Review Committee.... **Each ad or writing must be filed separately.**

(Emphasis added).

■■■ Izen, in his late-filed application for review, did not address www.joeizen.com or www.divorceintexas.net, but only addressed the Brady advertisement. Izen has not produced any evidence that the Committee ever offered any administrative review of the two websites that were undisputedly not mentioned in the letter, nor in Izen's response to the letter. For www.divorceintexas.net, the jury found Izen violated Rules 7.01(a), 7.01(e), 7.04(b)(3), 7.04(j), and 7.07(b). For www.joeizen.com, the jury found Izen violated Rules 7.02(a) and 7.04(b)(3). No evidence shows Izen's due process rights were violated with respect to the www.divorceintexas.net website or the www.joeizen.com website. After excluding all Part 7 violations by the Brady advertisement, the judgment can be he upheld by the eight independent viola-

tions of the Rules. *See Cluck,* 214 S.W.3d at 739; *see also Britton,* 95 S.W.3d at 681.

## C. Policy of Committee

Within his brief, Izen suggests that the Commission's pursuit of all three advertisements violated his due process rights because he believed the Committee would informally resolve any violations in the advertisements. He states that the "record in this case as well as the Committee's official publications and seminars which are subject to judicial notice by this Court ... establish that the Committee had a policy of allowing attorneys to resolve problems informally." This statement is not contained within the argument section of Izen's first issue concerning due process. Rather, this statement is found within Izen's issue two concerning a conflict in the jury's answers. Specifically, it is part of Izen's argument asserting the jury's answers to Question 9 should be disregarded.

■■■ Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(i). "Rule 38 requires [a party] to provide us with such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.,* 106 S.W.3d 118, 128 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Id.* "Issues on appeal are waived if an appellant fails to support his contention by citations to appropriate authority...." *Abdelnour v. Mid Nat'l Holdings, Inc.,* 190 S.W.3d 237, 241 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *see Daniel v. Falcon Interest Realty Corp.,* 190 S.W.3d 177, 189

(Tex.App.-Houston [1st Dist.] 2005, no pet.). Similarly, appellate issues are waived when the brief fails to contain a clear argument for the contentions made. *See Brock v. Sutker*, 215 S.W.3d 927, 929 (Tex.App.-Dallas 2007, no pet.) (holding issue is waived by brief that makes no attempt to analyze trial court's order within context of cited authority).

■ Izen does not identify any portion of the record that contains the "Committee's official publications and seminars" nor does he identify a request for the trial court to take judicial notice of the publications and seminars. This single conclusory statement without citation to the record or to relevant authority is insufficient to preserve this issue for appeal. Izen has waived any issue concerning the Committee's purported policy to resolve problems informally. *See Tesoro Petroleum Corp.*, 106 S.W.3d at 128; *see also Abdelnour*, 190 S.W.3d at 241.

### D. The Dissenting Opinion's Analysis of "Safe Harbor"

The dissent is premised, in part, upon the application of former Rule 7.07(c), which a federal court interpreted as a "safe harbor" provision. *See Texans Against Censorship, Inc. v. State Bar of Texas*, 888 F.Supp. 1328, 1367–68 (E.D.Tex.1995). Rule 7.07(c) provides that a lawyer may seek advance approval of an advertisement by filing for an advanced opinion concerning a proposed advertisement. Tex. Disciplinary R. Prof'l Conduct 7.07(c). This Rule provides a safe harbor for a lawyer by stating the Committee will review the advertisement submitted in advance and that a finding of noncompliance is not binding in a disciplinary proceeding, but a finding of compliance is binding in favor of the lawyer seeking the advance opinion, provided the lawyer is truthful and not misleading in the application for advanced review. *Id.* To take advantage of the safe harbor, however, the lawyer must file the advertisement in question "not less than thirty (30) days prior to the date of first dissemination." *Id.*

■ Here, it is undisputed that Izen did not file any of the three advertisements at issue 30 days in advance of dissemination. Furthermore, Izen does not raise the provisions of Rule 7.07(c) in his brief to this Court, and did not raise the Rule in the trial court. The letter from the Committee is the only source of due process rights Izen raises, and that letter expressly states that Izen failed to file the Brady advertisement prior to its dissemination. Because the record undisputedly shows that Izen did not ask for an advance opinion and he did not meet the filing requirements for an advance opinion, Rule 7.07(c) is inapplicable to this case. Additionally, neither Izen nor the Commission raised this issue of an advance opinion before the trial court or this Court. Rule 7.07(c) is inapplicable to this case and, therefore, any discussion of that matter is an improper advisory opinion. *See Van-Devender v. Woods*, 222 S.W.3d 430, 432–33 (Tex.2007) (stating courts should not decide constitutional issue not necessary to disposition of appeal, noting that any opinion on such issue would be advisory) (citing, among other authority, Tex.R.App. P. 47.1); *see also In re B.L.D.*, 113 S.W.3d 340, 350 (Tex.2003) (noting "[i]mportant prudential considerations" require parties to raise complaints at trial before appellate court will address them).

### Sufficiency of Evidence

In his fifth issue, Izen contends the evidence is legally and factually insufficient to support the jury's findings that he committed violations of the Rules. Izen asserts neither he nor his assistant approved the final content of the Brady advertisement;

only books and legal forms were sold at the website www.divorceintexas.net; the statement of opinion held by his clients as shown on the website www.joeizen.com complied with the Rules; and the trade name "Texas Legal Services Clinic" is not misleading. Other than these specific arguments, Izen states generally that the evidence is legally and factually insufficient to uphold the jury's answers to Questions 4, 5, 7, 8, 9, 11, and 12. Within his second issue, Izen asserts the evidence is insufficient to support the jury's answers to Questions 1, 2, and 3.

### A. Standard of Review

▬ "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). Legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* If the evidence would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id.* at 822. A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement. *Id.* Although the reviewing court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it, if the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *Id.*

▬ In determining factual sufficiency, this Court weighs all the evidence, both supporting and conflicting, and may set the finding aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d

175, 176 (Tex.1986); *Comm'n of Contracts v. Arriba Ltd.,* 882 S.W.2d 576, 582 (Tex. App.-Houston [1st Dist.] 1994, no writ). In an appeal from a bench trial, we may not invade the fact-finding role of the trial court, who alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony. *Nordstrom v. Nordstrom,* 965 S.W.2d 575, 580–81 (Tex.App.-Houston [1st Dist.] 1997, pet. denied).

### B. Analysis

Having determined the trial court properly included the Rule 5.03 violation for the Brady advertisement, the Part 7 violations for www.divorceintexas.net, and the Part 7 violations for www.joeizen.com, we address whether the evidence is legally and factually sufficient to support any of these violations. Any one of the jury's findings of violations of the Rules is sufficient to support the judgment of suspension. *See Cluck,* 214 S.W.3d at 739.

Question 9 asked the jury

Do you find by a preponderance of the evidence that Joe Alfred Izen failed to file with the Lawyer Advertisement and Solicitation Review Committee of the State Bar of Texas, either before or concurrently with the dissemination of the advertisements that he placed and failed to file a copy of each advertisement that he placed in the public media with the Lawyer Advertisement and Solicitation Review Committee of the State Bar of Texas?

The jury was instructed to answer "yes" or "no" separately for the Brady advertisement, www.joeizen.com, and www. divorceintexas.net. The jury answered "yes" for each advertisement.

▬ Within his fifth issue, Izen does not make any specific arguments concern-

ing Question 9. Furthermore, when testifying at trial, Izen stated he did not file a review application for www.joeizen.com. We hold the evidence is legally and factually sufficient to support the jury's finding concerning the failure to file a review application for www.joeizen.com. This finding is sufficient to support the trial court's judgment imposing a probated suspension on Izen. *See Cluck*, 214 S.W.3d at 739; *see also Britton*, 95 S.W.3d at 681. We therefore need not address the sufficiency of the evidence to support the findings of other violations.

We overrule Izen's fifth issue.

### Conflict in Jury's Answers

In his second issue, Izen contends, "the jury's answers to questions Nos. 1 through 12, upon proper resolution of any conflict, require entry of judgment in favor of Respondent Izen or a new trial."

■■■■■ To preserve error that the jury's findings are inconsistent, the complaining party must raise an objection in the trial court before the jury is discharged. *Oyster Creek Fin. Corp. v. Richwood Inv. II, Inc.*, 176 S.W.3d 307, 324 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *see also Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 24 (Tex. App.-Houston [14th Dist.] 2006, no pet.). Before discharging the jury, the trial court expressly asked, "Do the attorneys have any other matter that you would like the Court to take up before I release the jury?" Izen's counsel responded, "No, Your Honor." Almost 30 days after the jury was discharged, Izen filed a motion challenging the lack of evidence to support certain questions and identifying certain purported inconsistencies. Izen failed to raise the issue of an inconsistency or conflict in the jury's verdict prior to the jury's discharge, and thus has not preserved this issue for appeal. *See Oyster Creek Fin.*

*Corp.*, 176 S.W.3d at 324; *see also Kennedy Ship & Repair, L.P.*, 210 S.W.3d at 24. We hold Izen has waived his complaint. *See Oyster Creek Fin. Corp.*, 176 S.W.3d at 324; *see also Kennedy Ship & Repair, L.P.*, 210 S.W.3d at 24.

We overrule Izen's second issue.

### Admission of Evidence

In his third issue, Izen asserts that the trial court erred in the admission and exclusion of three types of evidence. First, Izen contends the trial court erred in its "[e]rroneous exclusion of admissions as hearsay and denial of right to cross-examination of the Commission's expert." Izen explains that the court should have allowed Izen to cross examine a Committee member with the member's prior statements. Izen identifies evidence pertinent to his claim that the Part 7 violations by the Brady advertisement should have been resolved administratively or informally. Second, Izen asserts the trial court erred in its "[a]dmission of incompetent expert testimony concerning the legal requirements of the Disciplinary rules from a non-lawyer." Izen does not specifically point to any evidence and challenges the witnesses generally. Izen explains the testimony was inadmissible "legal opinion" testimony. Third, Izen contends the trial court erred in its "[e]xclusion of relevant expert testimony." Izen explains that his proffered expert testimony was relevant to the issue of Izen's standing in the legal community.

■■■■ Izen has failed to show how any of this evidence is relevant to the factual issue of whether Izen failed to file an application for review concerning www. joeizen.com, which is an independent ground to uphold the trial court's judgment. *See Cluck*, 214 S.W.3d at 739. It is undisputed from Izen's own testimony that

he failed to comply with the application requirements for www.joeizen.com. We hold any purported error in the admission or exclusion of evidence is harmless because the evidence pertains to alternative grounds that are unnecessary to support the judgment. *See Cluck*, 214 S.W.3d at 739; *Britton*, 95 S.W.3d at 681.

We overrule Izen's third issue.

## Jury Charge

In his fourth issue, Izen asserts, "the trial court improperly charged the jury and erred by granting a directed verdict against respondent Izen on his counter-claims and by refusing to submit any of Izen's required special issues." Izen contends (A) Question 11 did not ask the jury to determine whether Izen or Sanchez approved the contents of the Brady advertisement; (B) the trial court committed error by refusing to submit any of Izen's requested jury instructions concerning Izen's affirmative defenses and counter-claims; and (C) the trial court erred by overruling Izen's vagueness objections to the charge.

### A. Question 11

Having determined that the jury's finding in response to Question 9 concerning the lack of a review application for www.joeizen.com is sufficient to support the judgment, we hold that the error, if any, in the submission of Question 11 is harmless. *See Cluck*, 214 S.W.3d at 739.

We overrule this portion of Izen's fourth issue.

### B. Denial of Izen's Requested Instructions

Izen states, "The Court committed error by refusing to submit any of Izen's requested jury instructions." Izen's argument on this portion of his fourth issue states,

Evidence existed in the record which supported submission of Izen's affirmative defenses and counter-claims for selective prosecution, violation of administrative due process, arbitrary, capricious and unreasonable action, restraint of trade, vagueness, failure to exhaust administrative remedies, invidious discrimination, violation of civil rights, and first amendment retaliation. By failing to submit these issues, the Court improperly granted a directed verdict on Izen's counter-claims and affirmative defenses and improperly charged the jury in violation of numerous authorities.

"The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex.R. Civ. P. 277. "The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence." Tex.R. Civ. P. 278. "Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." Tex.R. Civ. P. 278.

Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(i). As noted above, this requires a party to provide us with a discussion of the facts and relevant authorities. *See Tesoro Petroleum Corp.*, 106 S.W.3d at 128. Conclusory statements, unsupported by legal citations, are not sufficient. *See id.*

 Izen does not cite to any authority or to the record to support his bare assertion that "[e]vidence existed in the record which supported submission" of any coun-

terclaim or affirmative defense. We hold Izen's brief is inadequate to present any challenge to the failure to submit his requested instructions. *See* Tex.R.App. P. 38.1(i); *Tesoro Petroleum Corp.*, 106 S.W.3d at 128 (stating "brief conclusory statements, unsupported by legal citations" insufficient to present issue).

We overrule this portion of Izen's fourth issue.

### C. Izen's Vagueness Objections to the Charge

■ Izen's entire argument concerning this issue states, "The Court erred by overruling Izen's vagueness objections to the charge. *See Ex Parte: Chernosky*, 153 Tex.Crim. 52, 217 S.W.2d 673 (1949)." We hold this single conclusory sentence is inadequate to present any challenge to the trial court's overruling of Izen's vagueness objection because it fails to present any argument to explain why Izen believed the court's ruling was in error. *See* Tex.R.App. P. 38.1(i); *Tesoro Petroleum Corp.*, 106 S.W.3d at 128.

We overrule this portion of Izen's fourth issue.

### Judicial Misconduct

In his sixth issue, Izen contends, "Judicial Misconduct (abandoning the jury while the jury was deliberating) requires a new trial."

Izen cites no relevant authority to support his argument. In the "Scope of Review" section of this issue, Izen states,

> Whether a Judge has failed to properly supervise, or has undersupervised, Court staff must be determined De Novo. *In Re: Rose*, 144 S.W.3d 661, 708 (Tex.Rev.Trib.2004).

>> Although the clerk performs the physical act of record keeping, the Judge is ultimately responsible for the administration of his Court. *See Rose* at P.

708. Citing *In Re: Quick*, 553 So.2d 522, 525 (Miss.1989).

However, the *Rose* case has nothing to do with the judge's presence during deliberations and Izen does not attempt to explain how it applies to this case.

Izen also cites *Gomez v. U.S.*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). However, the holding in *Gomez* is that a federal magistrate may not conduct voir dire in a felony case. *Gomez*, 490 U.S. at 872, 109 S.Ct. at 2246. The Supreme Court also noted that a harmless-error analysis did not apply because a defendant has the basic right "to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside." *Id.* at 876, 109 S.Ct. at 2248. The instant case is not a criminal case and Izen does not complain about the trial court's actions during voir dire. Izen provides no other explanation or argument concerning the applicability of *Gomez* to this case.

■ We hold Izen's issue concerning the jury's deliberations while the judge was outside of Harris County is waived due to inadequate briefing. *See* Tex.R.App. P. 38.1(i); *Tesoro Petroleum Corp.*, 106 S.W.3d at 128; *see also Woodside v. Woodside*, 154 S.W.3d 688, 691 (Tex.App.-El Paso 2004, no pet.) (holding issue waived when only authorities cited were "a few irrelevant cases and statutes").

Within this issue, Izen also appears to contend that the trial court's orders issued while the judge was outside of Harris County were void. However, Izen does not specifically identify or complain of any order. The only order mentioned in his argument is the trial court's instruction to the bailiff to tell the jury to "leave, go home, and return [the next day] at 9:00" when the judge would be present. Izen contends the judge committed misconduct because, while outside of Harris County,

the judge allowed the jury to deliberate and instructed the jury to stop the deliberation.

Within this section Izen cites *In re Barber*, 982 S.W.2d 364 (Tex.1998). Izen erroneously cites this case for the proposition that a person acting under the authority of the judge could affix the judge's signature to a document using a rubber stamp if it was done "under his immediate authority and direction and in his presence." *See Barber*, 982 S.W.2d at 367. However, the Texas Supreme Court did away with the requirement of the judge's presence. After noting that the judge's physical presence could be unrealistic in certain circumstances, the Supreme Court stated, "We therefore hold that a judge may sign a document by directing another person who is under the judge's immediate authority to affix the judge's signature using a rubber stamp." *Id.* *Barber* is inapplicable to jury deliberations. Furthermore, Izen does not suggest that another person signed an order for the judge.

Izen also cites article five, section seven of the Texas Constitution which provides, in relevant part, "The [District] Court shall conduct its proceedings at the County Seat of the County in which the case is pending, except as otherwise provided by law." Tex. Const. art. V, § 7. Case law interpreting article five has stated, "[I]f the court renders judgment or issues an order while sitting outside the county in which suit is pending, such judgment or order is void." *Howell v. Mauzy*, 899 S.W.2d 690, 699 (Tex.App.-Austin 1994, writ denied). Izen has not shown that the trial court conducted any proceedings outside of Harris County. The judge was present in Harris County when she instructed the jury to return for jury deliberations. While the judge was outside Harris County, the judge did not answer the jury's question. Instead, the only action taken while the judge was outside of Harris County was the ministerial action to tell the bailiff to send the jury home to reconvene at a later date. The ministerial action is not a "proceeding," the issuance of an "order," nor a "judgment." *See id.*

But assuming the trial court's instruction to the jury to cease its deliberations and return the next day was void because the judge was not present in Harris County, Izen does not explain or analyze how the trial court's action in halting the allegedly improper jury deliberations has harmed him. As a logical matter, if the deliberations were improper as asserted by Izen, the relief he sought was exactly what the trial court granted—a stop to the deliberations until the judge was present in the county. When the trial court judge had returned and before it received the jury's verdict, Izen stated, "I have objections.... I believe that I can prove that the jury deliberated in your absence; specifically I make the affirmative claim...." At this point the trial court judge interrupted Izen to state the jury had come in to deliberate and the jury was told to leave and come back to deliberate the next day. Izen did not state the legal basis for his objections and he did not ask for any relief from the court, such as a mistrial. We hold that the error, if any, in the trial court stopping jury deliberations until the judge was in Harris County was harmless. *See* Tex.R.App. P. 44.1(a)(1) (stating court of appeals may not reverse for trial court's error unless that error "probably caused the rendition of an improper judgment").

We overrule Izen's sixth issue.

### Conclusion

We affirm the judgment of the trial court.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

I respectfully dissent. I would hold that the interpretation and application in this case by the State Bar of Texas Lawyer Advertisement and Solicitation Review Committee (Advertising Review Committee or Committee) and appellee Commission for Lawyer Discipline (Commission) of former Texas Disciplinary Rule of Professional Conduct 7.07, governing "Filing Requirements for Public Advertisements and Written, Recorded, Electronic, or Other Digital Solicitations,"[1] violated appellant Joe Alfred Izen Jr.'s fundamental constitutional right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and article 1, section 19 of the Texas Constitution.[2] I would vacate the judgment of the district court in favor of the Commission and render judgment that the proceedings against Izen be dismissed.[3]

## BACKGROUND

Former Texas Disciplinary Rule 7.07(a) provided that, except as provided by paragraph (d) of the Rule, a lawyer must file with the Advertising Review Committee a copy of the written solicitation communication and a check or money order payable to the State Bar of Texas for the fee set by the Board of Directors to defray the expense of enforcing the rules related to such solicitations. TEX. DISCIPLINARY R. PROF'L CONDUCT 7.07, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2005) (hereinafter referred to as former Rule 7.07), current version *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon Supp. 2009).[4]

1. TEX. DISCIPLINARY R. PROF'L CONDUCT 7.07, *reprinted in* TEX GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2005) (hereinafter referred to as former Rule 7.07), current version *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon Supp. 2009).

2. Article 1, section 19 provides:
 No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST art. 1, § 19.

3. This case arose in January 2003. Therefore, the Disciplinary Rules of Professional Conduct at issue in this appeal are those in effect in 2003. The disciplinary rules were amended effective June 1, 2005, but Izen's constitutional complaint is not mooted by the amendments to the disciplinary rules. The rules set out and addressed here are the former rules, with citations to parallel passages in the current rules.

4. Former Rule 7.07 provided, in relevant part:
 (a) Except as provided in paragraph (d) of this Rule, a lawyer shall file with the Lawyer Advertisement and Solicitation Review Committee of the State Bar of Texas, either before or concurrently with the mailing or sending of a written solicitation communication:
 (1) a copy of the written solicitation communication being sent or to be sent to one or more prospective clients for the purpose of obtaining professional employment ...;
 (2) a check or money order payable to the State Bar of Texas for the fee set by the Board of Directors. Such fee shall be for the sole purpose of defraying the expense of enforcing the rules related to such solicitations.
 (b) Except as provided in paragraph (d) of this Rule, a lawyer shall file with the Lawyer Advertisement and Solicitation Review Committee of the State Bar of Texas, either before or concurrently with the first dissemination of an advertisement in the public media, a copy of that advertisement. The filing shall include:
 (1) a copy of the advertisement in the form in which it appears or is or will be disseminated, such as a videotape, an audiotape, a print copy, or a photograph of outdoor advertising;
 (2) a production script of the advertisement ... if the advertisement is in or will be in a form in which the advertised message is not fully revealed by a print copy or photograph;

Former Rule 7.07(b) further required that, except as provided by paragraph (d), the lawyer must file with the Advertising and Review Committee for review on or before the date of its first dissemination in the public media, "(1) a copy of the advertisement in the form in which it appears or is or will be disseminated ...; (2) a production script of the advertisement ... if the advertisement is in or will be in a form in which the advertised message is not fully revealed by a print copy or photograph; (3) a statement of when and where the advertisement has been, is, or will be used; and (4) a check or money order payable to the State Bar of Texas for the fee set by the Board of Directors." *Id.* at 7.07(b).[5]

> (3) a statement of when and where the advertisement has been, is, or will be used; and
> (4) a check or money order payable to the State Bar of Texas for the fee set by the Board of Directors. Such fee shall be for the sole purpose of defraying the expense of enforcing the rules related to such advertisements.
> (c) A lawyer who desires to secure an advance advisory opinion concerning compliance of a contemplated solicitation communication or advertisement may submit to the Lawyer Advertisement and Solicitation Review Committee, not less than thirty (30) days prior to the date of first dissemination, the material specified in paragraph (a) or (b) of this Rule, including the required fee.... An advisory opinion of the Lawyer Advertisement and Solicitation Review Committee of noncompliance is not binding in a disciplinary proceeding or disciplinary action but a finding of compliance is binding in favor of the submitting lawyer if the representations, statements, materials, facts and written assurances received in connection therewith are true and are not misleading. The finding constitutes admissible evidence if offered by a party.
> Former TEX DISCIPLINARY R. PROF'L CONDUCT 7.07.

Section (d) of the current Rule 7.07 states, with respect to the effect of the findings of the

Former Rule 7.07(c) was a "safe harbor" provision.[6] It provided that a lawyer could "secure an advance advisory opinion concerning compliance of a contemplated solicitation communication or advertisement" by "submit[ting] to the Lawyer Advertisement and Solicitation Review Committee, not less than thirty (30) days prior to the date of first dissemination, the material specified in paragraph (a) or (b) of this Rule, including the required fee." *Id.* at 7.07(c). It stated that "[a]n advisory opinion of the Lawyer Advertisement and Solicitation Review Committee of noncompliance is not binding in a disciplinary proceeding or disciplinary action but a finding of compliance is binding in favor of the submitting lawyer if the representations, statements, materials, facts and written

> Advertising Review Committee in response to a request for an advisory opinion:
>> If a lawyer submits an advertisement or solicitation communication for pre-approval, a finding of noncompliance by the Advertising Review Committee is not binding in a disciplinary proceeding or disciplinary action but a finding of compliance is binding in favor of the submitting lawyer as to all materials actually submitted for pre-approval if the representations, statements, materials, facts and written assurances received in connection therewith are true and are not misleading. The finding of compliance constitutes admissible evidence if offered by a party.
> TEX DISCIPLINARY R. PROF'L CONDUCT 7.07(c), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon Supp. 2009).

5. Current Rule 7.07 requires the submission of all lawyer advertising in whatever form. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 7.07(a).

6. Current Rule 7.07 adds a new section (c) that is specific to websites and contains essentially the same strictures as current section (b), which encompasses all other forms of advertisement. Advisory opinions, formerly addressed in section 7.07(c), are now addressed in section 7.07(d). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 7.07. Former section (d), with amendments, is now section (e). *Id.*

assurances received in connection therewith are true and are not misleading." *Id.* It warned that "[t]he finding constitutes admissible evidence if offered by a party." *Id.*

Former Rule 7.07(c) set out a detailed list of exceptions to the filing requirements of paragraphs (a) and (b) for which filing was not required,[7] some of them requiring subjective interpretation. These included (1) "an advertisement in the public media that contains only part or all of the following information [set out in subsections (i)-(xii) ], provided the information is not false or misleading," including, for example, "(xi) any disclosure or statement required by these rules" and "(xii) any other information specified from time to time in orders promulgated by the Supreme Court of Texas"; (2) "an advertisement in the public media" that meets enumerated specifications (i) and (ii); (3) "a listing or entry in a regularly published law list"; (4) announcement cards stating changes to a firm "or a tombstone professional card"; (5) a newsletter satisfying enumerated restrictions (i)-(iii); (6) written solicitation communications "not motivated by or concerned with a particular past occurrence or event or a particular series of past occurrences or events, and also . . . not motivated by or concerned with the prospective client's specific existing legal problem of which the lawyer is [aware]"; (7) written solicitations whose use to secure professional employment was "not significantly motived by a desire for, or by the possibility of obtaining, pecuniary gain"; and (8) written solicitations "requested by the prospective client." *Id.* at 7.07(d).

Former Rule 7.07(e) provided, "If requested by the Lawyer Advertisement and Solicitation Review Committee, a lawyer shall promptly submit information to substantiate statements or representations made or implied in any advertisement in the public media and/or written solicitation." *Id.* at 7.07(e).[8]

The comments to former Rule 7.07 explained (and, as slightly amended, still explain) the State Bar's construction and administration of the rule, including the filing requirements, the State Bar's procedures for applying the rule, and the operation and extent of the "safe harbor" provision in former section 7.07(c).

Comment 2 to former Rule 7.07 stated:

2. Copies of non-exempt written solicitations or advertisements in public media must be provided to the Advertising Review Committee of the State Bar of Texas either in advance or concurrently with dissemination, together with the fee required by the State Bar of Texas Board of Directors. Presumably, the Advertising Review Committee will report to the appropriate grievance committee any lawyer whom it finds from the reviewed products has disseminated an advertisement in the public media or written solicitation communication that violates Rules 7.02, 7.03, 7.04, or 7.05, or, at a minimum, any lawyer whose violation raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.

---

7. Current rule 7.07(d)(1) is identical to former section 7.07(c)(1), except for the addition of a proviso that states, "provided those materials comply with Rule 7.02(a) through (c) and, where applicable, Rule 7.04(a) through (c)." *See* Tex. Disciplinary R. Prof'l Conduct 7.07(d)(1).

8. Former section (e) is now section (f), and is the same except for additional language that restricts the application of the section to representations "by which the lawyer seeks paid professional employment." Tex. Disciplinary R. Prof'l Conduct 7.07(f).

See Rule 8.03(a).[9]

Former Tex. Disciplinary R. Prof'l Conduct 7.07 cmt. 2.

Comment 4 to Rule 707 provided:

4. A lawyer wishing to do so may secure an advisory opinion from the Advertising Review Committee concerning any proposed advertisement in the public media or any written solicitation in advance of its first use or mailing by complying with Rule 7.07(c). This procedure is intended as a service to those lawyers who want to resolve any possible doubts about their proposed advertisements' or written solicitations' compliance with these Rules before utilizing them. Its use is purely optional....

*Id.* at 7.07 cmt. 4. Comment 4 further stated that advance clearance was not required and that a finding of noncompliance by the Advertising Review Committee was not binding in a disciplinary proceeding, but a finding of compliance was binding, so long as the lawyer's presentation to the Committee in connection with the advisory opinion "is true and not misleading." *Id.*

Comment 5 set out the State Bar's administrative procedure for evaluating filings under former Rule 7.07, including requests for advisory opinions. It stated that, "[u]nder its Internal Rules and Operating Procedures, the Advertising Review Committee is to complete its evaluations no later than 25 days after the date of receipt of a filing." *Id.* at 7.07 cmt. 5. It continued:

The only way that the Committee can extend that review period is to: (1) determine that there is reasonable doubt

whether the advertisement or written solicitation communication complies with these Rules; (2) conclude that further examination is warranted but cannot be completed within the 25–day period; and (3) advise the lawyer of those determinations in writing within that 25–day period. The Committee's Internal Rules and Operating Procedures also provide that a failure to send such a communication to the lawyer within the 25–day period constitutes approval of the advertisement or written solicitation communication. Consequently, if an attorney submits an advertisement in the public media or written solicitation communication to the Committee for advance approval not less than 30 days prior to the date of first dissemination as required by these Rules, the attorney will receive an assessment of that advertisement or communication before the date of its first intended use.

*Id.* at 7.07 cmt. 5.

In January, 2003, the Advertising Review Committee sent a letter to Izen concerning an advertisement that had appeared in a Brady, Texas Yellow Pages telephone directory. The letter notified Izen that the Brady advertisement had not been submitted for review as required by the Texas Disciplinary Rules of Professional Conduct. The letter stated, in relevant part:

It has come to the attention of the staff of the Advertising Review Department that you or your firm has disseminated either a public media advertisement or a written communication in violation of Part 7 of the Texas Disciplinary Rules of

9. The current comment is virtually identical except for clarifying that it applies to websites as well as written solicitations. Both current and former Rule 8.03(a), referenced in the comment, require a lawyer who knows "that another lawyer has committed a violation of applicable rules of professional conduct that

raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects" to "inform the appropriate disciplinary authority." Tex. Disciplinary R. Prof'l Conduct 8.03(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Vernon 2005).

Professional Conduct. A copy of the ad or writing in question is attached.

Section 7.07 of the Texas Disciplinary Rules of Professional Conduct outlines the filing requirements for advertisements and written solicitations. Most ads and written solicitations are required by Rules 7.07(a) or (b) to be filed with the Advertising Review Committee upon first dissemination. There are certain exemptions to the filing requirements which are delineated in Rule 7.07(d). Ads and writings *exempt* under 7.07(d) do not have to be filed but must still comply with all other applicable provisions of Part 7. Ads and writings *not exempt* under 7.07(d) must meet the filing requirements of 7.07(a) and (b) and must also comply with all other applicable provisions of Part 7.

The letter advised Izen that "if an ad or writing is non-exempt, the failure to file such ad or writing with the Committee is a violation of the advertising rules even if the ad or writing complies with the rules in all other respects." It informed him that the Advertising Review Committee "can report to the appropriate grievance committee any lawyer whom it finds has disseminated an advertisement or writing that violates *any portion* of Part 7. However, in an initial effort to handle violations administratively before reporting an attorney to the grievance system, the Committee will allow you one opportunity to submit your advertisement or written solicitation letter for review at this time."

The letter "requested" that Izen "file the attached ad or writing with the Advertising Review Department," i.e., the Brady directory listing, within twenty (20) days of his receipt of the letter,

in the form of an official application packet which includes: a copy of the ad or writing, a completed application form, and a $75.00 filing fee. In addition, there is a late filing fee of $225.00 assessed to each advertisement or written solicitation letter that is not timely filed as required by Rule 7.07(a) or (b) but rather is filed in response to a certified letter from the Advertising Review Committee. Therefore, in order for us to accept your application packet for filing, it must be accompanied by a $75.00 standard filing fee and a $225.00 late filing fee for a total of $300.00. These fees should be combined into one check.

The letter reminded Izen that "[t]he rules, filing requirements, and application form were published in the June 1995 issue of the *Texas Bar Journal,*" and it enclosed an application form and the website address at which the form could be found, "[a]s an accommodation to you." The letter then stated:

If your completed packet is not *received in this office* by the twentieth (20th) day following the date of your receipt of this letter, the Committee will forward this matter to the appropriate grievance committee for disciplinary action. It is *absolutely essential* that you include your unique file number (referenced above) on *all* correspondence pertaining to this matter. The inclusion of this number will allow us to accurately remove your file from those pending disciplinary action. Thank you for your cooperation.

A copy of Izen's advertisement in the Brady directory was attached to the Committee's letter.

In response to the Committee's letter, Izen submitted an application for review of the Brady directory listing, along with the $300 filing fee. During its review of the Brady advertisement, the Committee *sua sponte* reviewed the two websites used by Izen, but it did not notify Izen that it had broadened the scope of its investigation

into other advertisements and other potential rule violations.

During the course of its review, the Committee noted items in the Brady advertisement and on the websites that it determined violated various State Bar Rules concerning advertisements. However, it did not notify Izen of its determinations, violating the provisions in its own Internal Operating Procedures (I.O.P.s) that required it "to complete its evaluations no later than 25 days after the date of receipt of a filing" and that further provided that "[t]he only way that the Committee can extend that review period is to: (1) determine that there is reasonable doubt whether the advertisement or written solicitation communication complies with these Rules; (2) conclude that further examination is warranted but cannot be completed within the 25–day period; and (3) advise the lawyer of those determinations in writing within that 25–day period." Former TEX. DISCIPLINARY R. PROF'L CONDUCT 7.07 cmt. 5. Instead, the Committee referred both the Brady Yellow Pages advertisement and the websites to the Commission for the initiation of disciplinary proceedings for violations of Rule 7.07 and all the rules it had determined that Izen's advertisements violated.

The Committee's action in referring Izen's Yellow Pages advertisement and websites to the Commission for prosecution without notice of the result of its review of the Brady Yellow Pages ad, and without notice that it had broadened its investigation to include Izen's websites and other potential rule violations beyond the violation of former Rule 7.07 referenced in its January 2003 letter, also violated the provision in its I.O.P.s that a failure to send a communication regarding the result of the Committee's review to the lawyer within the 25–day period "constitutes approval of the advertisement or written solicitation communication." *Id.* And it belied the State Bar's representation in the Comment to Rule 7.07 that, "[c]onsequently, if an attorney submits an advertisement in the public media or written solicitation communication to the Committee for advance approval not less than 30 days prior to the date of first dissemination as required by these Rules, the attorney will receive an assessment of that advertisement or communication before the date of its first intended use." *Id.*

The Commission—like the Committee, an arm of the State Bar—filed a petition in district court alleging that Izen had violated Texas Disciplinary Rules of Professional Conduct 7.01(a), 7.01(e), 7.02(a)(2), 7.04(b)(3), 7.04(j), 7.07(b), 7.04(e), and 5.03(b)(1).[10] The disciplinary rules the Commission claimed Izen had violated contained a number of restrictions on attorney advertising beyond those set out or referenced in Rule 7.07, of whose violation he had been notified.[11]

---

10. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 5.03(b)(1), 7.01(a), 7.01(e), 7.02(a)(2), 7.04(b)(3), 7.04(j), 7.07(b), and 7.04(e), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2005). The Rules cited are those in effect at the time of Izen's violations. The Rules have since been amended. For clarity and consistency, we refer to the former Rules as cited by the parties and recited in the judgment.

11. Former Rule 7.01(a) prohibited a lawyer in private practice from practicing "under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under such name, or a firm name containing names other than those of one or more of the lawyers in the firm," with certain enumerated exceptions. Former TEX DISCIPLINARY R. PROF'L CONDUCT 7.01(a). Former Rule 7.01(e) provided that "[a] lawyer shall not advertise in the public media or seek professional employment by written communication under a trade or fictitious name," again with enumerated exceptions. *Id.* at 7.01(e). Current Rule

The Commission claimed that Izen had engaged in false and deceptive advertising by "constructively authorizing" the Brady directory listing and by failing to seek approval of the ad in writing before publishing it in the Brady Yellow Pages. It then expanded its complaint to include the contents of the two websites owned and disseminated by Izen, and it accused him of misleading and/or defrauding the public by stating he was licensed to practice before the Supreme Court of the United States and various other federal courts on the ground that the right to practice before a court is not a "license"; by failing to place the required disclaimers "not board certified" in a conspicuous place in the two websites; by comparing his legal services to other attorneys in a false and misleading manner by stating he was considered by his clients "[t]o be a highly proficient attorney with few peers in the legal profession when it comes to a committed defense of those he represents" without proof of this statement by "verifiable and objective data"; and by practicing law under a trade name, specifically "Texas Legal Services," based on the Brady Yellow Pages ad and the wording of his "divorceintexas" website.

7.01 is virtually identical. *See* Tex. Disciplinary R. Prof'l Conduct 7.01.

Former Rule 7.02(a) provided that "[a] lawyer shall not make a false or misleading communication about the qualifications or the services of any lawyer or firm." Former Tex. Disciplinary R. Prof'l Conduct 7.02 (a). Subsection (a)(2) defined a communication as "false or misleading if it . . . is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate these rules or other law." *Id.* at 7.02(a)(2). The current rule elaborates upon this definition, stating that a communication is false or misleading if it "contains any reference in a public media advertisement to past successes or results obtained unless" four enumerated criteria are met, including (i) that the lawyer served as lead counsel or had primary responsibility for the settlement or verdict, (ii) the amount involved was actually received by the client, (iii) "the reference is accompanied by adequate information regarding the nature of the case or matter, and the damages or injuries sustained by the client," and (iv) "if the gross amount received is stated, the attorney's fees and litigation expenses withheld from the amount are stated as well." Tex. Disciplinary R. Prof'l Conduct 7.02(a)(2).

Former Rule 7.04(b)(3) required a lawyer advertising in the public media to state with respect to each area advertised in which he was not board certified that he was not or that no designation had been made by the Texas Board of Legal Specialization in that area. Former Tex. Disciplinary R. Prof'l Conduct 7.04(b)(3). Again the current rule is more complex in requiring that an attorney in the case of infomercial or comparable presentation, state that the presentation is an advertisement;

(i) both verbally and in writing at its outset, after any commercial interruption, and at its conclusion; and

(ii) in writing during any portion of the presentation that explains how to contact a lawyer or law firm.

Tex. Disciplinary R. Prof'l Conduct 7.04(b)(3).

Former Rule 7.04(e) required, like the current rule, that "[a]ll advertisements in the public media for a lawyer or firm must be reviewed and approved in writing by the lawyer or a lawyer in the firm." Former Tex. Disciplinary R. Prof'l Conduct 7.04(e).

Former Rule 7.04(j) required, like the current rule, that "[a] lawyer or firm who advertises in the public media must disclose the geographic location, by city or town, of the lawyer's or firm's principal office" and "shall not advertise the existence of any office other than the principal office" unless the office is staffed by a lawyer at least three days a week or the advertisement states the days and times a lawyer will be present at the office or "that meetings with lawyers will be by appointment only." *Id.* at 7.04(j).

Former Rule 5.03(b)(1) provides that "a lawyer shall be subject to discipline for the conduct of [a nonlawyer employed or retained by or associated with a lawyer] that would be a violation of these rules if engaged in by a lawyer if . . . the lawyer orders, encourages, or permits the conduct involved." *Id.* at 5.03.

Izen responded that the Committee and the Commission had denied him administrative due process and violated their own rules and regulations by failing to provide him an opportunity for review even though it had demanded, was paid, and accepted and retained the late fees it solicited. He also responded that he had changed the Brady Yellow Pages ad when he did not hear from the Committee. He denied authorizing the ad in the form in which it was printed and claimed that, once he discovered the errors, he disconnected the telephone line to the Brady office and refused to accept any clients from the telephone number. Izen contended, and the Committee and the Commission admitted, that he had the right to practice before the United States Supreme Court and all federal district courts and courts of appeal listed in his websites. He asserted that no "legal services" were offered to the public through the "divorceintexas" website, that the website only promoted and sold legal books and forms, that his competitors were publishers Nolo Press and Parsons Technology, and that the activity advertised on the website was exempted from the Texas definition of the practice of law. Finally, he argued that the opinions he attributed to his clients in his advertisements were supported by his participation in recently reported tax decisions and the opinions of his fellow practitioners.

Following trial to a jury, the district court entered judgment specifically reciting that the jury had found violations of Rules 7.01(a), 7.01(e), 7.02(a)(2), 7.04(b)(3), 7.04(e), 7.04(j), 7.07(b), and 5.03(b)(1) and stating, "The Court further finds and concludes that the proper discipline of Respondent for each act of professional misconduct as found in this case is suspension from the practice of law." The trial court's judgment suspended Izen's license to practice law, probated for 24 months, and imposed sanctions on him in the form of court costs and attorney's fees incurred by appellee, the Commission for Lawyer Discipline.

## Due Process

In his first issue, Izen contends the judgment of the trial court should be reversed and judgment rendered in his favor "based on the State Bar Advertising Review Committee and the Commission for Lawyer Discipline's violation of their own rules and regulations[,] administrative due process[,] and failure to exhaust administrative remedies." He contends that the Committee falsely promised him it would review the Brady Yellow Pages ad if he made an application and paid the fees and that he could resolve any complaints about the ad informally and avoid the filing of a formal grievance. He contends he paid the fees demanded and that the Committee retained his money but refused to review the ad in question and, instead, made further complaints against him concerning ads other than those initially raised and filed a grievance against him. *Id.* He contends that he "had a substantive liberty and property interest protected by the Fifth Amendment to the United States Constitution and the Due Process of Law provisions of the Texas Constitution to the informal resolution of the Committee's Complaint(s) offered at a price by the Committee's solicitations." *Id.*

I interpret Izen's complaint to be that he has a fundamental constitutional property interest in his law license that entitles him to due process before he may be suspended from the practice of law. I agree that his due process rights under the Fifth Amendment and the Texas Constitution were violated by the State Bar of Texas Advertising Review Committee and Commission for Lawyer Discipline's application to him of the procedures described in former Rule 7.07 of the Texas Disciplinary

Rules of Professional Conduct. I would hold, therefore, that, Rule 7.07, as applied in this case, is unconstitutional under the Due Process Clause of both the Federal and Texas Constitutions.

## A. Standard of Review

As an agency, a commission like the Commission for Lawyer Discipline "is a creation of the legislature with no inherent authority and only those powers that are 'expressly conferred upon it.'" *Lee v. Tex. Workers' Compensation Comm'n*, 272 S.W.3d 806, 813 (Tex.App.-Austin 2008, no pet.) (quoting *Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 316 (Tex. 2001)). Under the Texas State Bar Act, the power to exercise administrative control over the Texas State Bar, a public corporation and an administrative agency of the judicial department of government, resides in the Supreme Court. TEX. GOV'T CODE ANN. § 81.011 (Vernon 2005). The Act was promulgated by the Legislature "in aid of the judicial department's powers under the constitution to regulate the practice of law," and it confers power on the "Supreme Court of Texas, on behalf of the judicial department," to "exercise administrative control over the state bar under this chapter." *Id.* at § 81.011(b), (c); *see also* Preamble, TEX. GOV'T CODE, tit. 2, subtit. G app. A preamble (Vernon 2005) (stating that State Bar Rules are adopted in aid of supreme court's "inherent power to regulate the practice of law"); *Texans Against Censorship, Inc. v. State Bar of Texas*, 888 F.Supp. 1328, 1334 (E.D.Tex. 1995), *aff'd* 100 F.3d 953 (5th Cir.1996) (stating that power to regulate practice of law resides in Supreme Court and derives from both statutory grant of power and Supreme Court's inherent judicial power). The power to regulate the practice of law is thus an administrative one. *State Bar of Texas v. Gomez*, 891 S.W.2d 243, 245 (Tex.1994). And the actions of the State Bar of Texas Advertising Review Committee and Lawyers Disciplinary Commission are undertaken in aid of the Supreme Court's inherent judicial power to exercise administrative authority to regulate the practice of law. *See* TEX. GOV'T CODE ANN. § 81.011. The Committee and the Commission are therefore agents of the state.

Due process is implicated when the state or its agents deprives a person of a protected liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972); *Lee*, 272 S.W.3d at 817. Thus, in order to bring a due process claim, a Texas plaintiff must assert a liberty or property interest that is protected by the Fourteenth Amendment of the United States Constitution or article I, section 19 of the Texas Constitution. *See Roth*, 408 U.S. at 569, 92 S.Ct. at 2705–06 (noting "due process appl[ies] only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property"); *see also Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 671 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) ("The Due Process Clause is only activated when there is some substantial liberty or property interest which is deserving of procedural protections."). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Nat'l Collegiate Athletic Ass'n v. Yeo*, 171 S.W.3d 863, 870 n. 19 (Tex.2005) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709).

An attorney has a constitutionally protected interest in his license to practice law. *See Cleveland v. United States*, 531 U.S. 12, 15, 26 n. 4, 121 S.Ct. 365, 368, 374 n. 4, 148 L.Ed.2d 221 (2000) (finding property interest requiring due process in vid-

eo poker license and stating that "[t]he question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law," and "[i]n some contexts, ... individuals have constitutionally protected property interests in state-issued licenses essential to pursuing an occupation or likelihood"); *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (harness racing trainer license); *Gershenfeld v. Justices of the Supreme Court of Pennsylvania,* 641 F.Supp. 1419, 1423 (E.D.Pa.1986) (law license); *Statewide Grievance Comm. v. Johnson,* 946 A.2d 1256, 1261, 108 Conn.App. 74, 81 (Conn.App.2008) (holding that license to practice law is property interest that cannot be suspended without due process, "[i]n part because such actions are adversary proceedings of a quasi-criminal nature").

When a constitutionally protected property interest is at stake, the courts must determine what process is due to protect that interest. *Roth,* 408 U.S. at 571, 92 S.Ct. at 2706; *Lee,* 272 S.W.3d at 817. In so doing, they rely upon a three-pronged test, "weighing (1) the private interest affected by the state action; (2) the risk of erroneous deprivation of a constitutionally protected interest under the procedures used and the likely benefit of any additional procedures; and (3) the government's interest, including the fiscal and administrative burdens that additional procedural requirements would entail." *Lee,* 272 S.W.3d at 817; *see Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Univ. of Tex. Med. Sch. v. Than,* 901 S.W.2d 926, 930 (Tex. 1995). Due process requires, at a minimum, notice and an opportunity to be heard at a meaningful time in a meaningful manner. *Mathews,* 424 U.S. at 333, 96 S.Ct. at 902; *Perry v. Del Rio,* 67 S.W.3d 85, 92 (Tex.2001). A license to practice law constitutes a type of property whose

divestment cannot be affected without affording substantial due process, including the opportunity to be heard and to confront and cross-examine adverse witnesses. *In re Ming,* 469 F.2d 1352, 1353 (7th Cir. 1972) (holding that failure to afford hearing prior to issuing order of suspension based on misdemeanor conviction violated due process).

In *In re Ruffalo,* the United States Supreme Court held that where an attorney in state disbarment proceedings had no notice that his employment of a certain person would be considered a disbarment offense until after both he and that person had testified at length on all material facts pertaining to that phase of his case, the absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges against him deprived the attorney of procedural due process, even though he was thereafter given several months to respond to the charge. 390 U.S. 544, 550–52, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968). The court stated that disbarment, which is designed to protect the public, is a punishment or penalty imposed on the attorney and, therefore, he is entitled to procedural due process, including notice of the charge. *Id.* at 550, 88 S.Ct. at 1226. Thus, when proceedings for disbarment are not based on matters occurring in open court in the presence of judges, notice should be given to the attorney of the charges made and an opportunity afforded him to explain and defend against them. *Id.* It held that an attorney is entitled to procedural due process in disbarment proceedings, including fair notice of the charge. *See id.*

The Supreme Court specifically observed in *Ruffalo* that the petitioner had had no notice that his employment of the employee would be considered a disbarment offense until after both he and the employee had testified at length on all the

material facts pertaining to that phase of his case. *Id.* at 550–51, 88 S.Ct. at 1226. The Court commented, quoting the dissenting judge in the court below, "Such procedural violation of due process would never pass muster in any normal civil or criminal litigation." *Id.* at 551, 88 S.Ct. at 1226. It stated:

> These are adversary proceedings of a quasi-criminal nature. The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.

*Id.* (internal citations omitted).

The Court specifically noted that the state and local bar associations that filed amici briefs had argued that there was no due process violation because the state disciplinary board had given Ruffalo several months to respond to the charge. *Id.* at 551 n. 4, 88 S.Ct. at 1226 n. 4. The Court disagreed, stating,

> This argument overlooks the fact that serious prejudice to petitioner may well have occurred because of the content of the original 12 specifications of misconduct. He may well have been lulled 'into a false sense of security' (*Bouie v. City of Columbia,* 378 U.S. 347, 352, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894) that he could rebut charges Nos. 4 and 5 by proof that [the employee] was his investigator rather than a solicitor of clients. In that posture he had 'no reason even to suspect' (*ibid.*) that in doing so he would be, by his own testimony, irrevocably assuring his disbarment under charges not yet made.

*Id.* The Court held, "This absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived petitioner of procedural due process." *Id.* at 552, 88 S.Ct. at 1226.

**B. Analysis**

Izen asserts the letter from the Committee creates an entitlement to "an initial effort to handle violations administratively before reporting an attorney to the grievance system." He contends the letter is a mutually explicit understanding to reach "informal resolution of any [c]omplaint concerning Izen's ads, without a filing of a formal grievance" or "resolve any potential grievance informally." Specifically, he states, "The Committee failed to follow the very procedures which it outlined in its letters [sic]: (1) pay a fee, (2) apply for a review of the ad, and (3) resolve any potential grievance informally." I agree.

In my view, this case is virtually on all fours with *Ruffalo.* The Committee's letter appeared to extend to Izen the protections of the safe harbor in former Rule 7.07(c), but, in fact, it did not. Instead, as with the notice to Ruffalo, which cited only the "original 12 specifications of misconduct," the Committee's letters cited only to Izen's violation of former Rule 7.07, consisting of his publishing the Brady Yellow Pages ad without filing it with the Committee. Furthermore, "in an initial effort to handle violations administratively before reporting an attorney to the grievance system," the letter specifically offered him "one opportunity to submit your advertisement or written solicitation letter for review at this time," as provided in the safe harbor rule, former Rule 7.07(c), upon his paying the filing fee and late fee, which he did. Thus, like Ruffalo, Izen "may well have been lulled 'into a false sense of security'" that he could rebut the Committee's charges against him in accordance with the administrative procedures of the Committee as set out in Comments 4 and 5 to the Rule in the Texas Disciplinary Rules of Professional Conduct. *Ruffalo,* 390

U.S. at 551, 88 S.Ct. at 1226 (quoting *Bouie*, 378 U.S. at 352, 84 S.Ct. at 1702); *see* former TEX. DISCIPLINARY R. PROF'L CONDUCT 7.07 cmts. 4–5.

After receiving the January 2003 letter from the Advertising Review Committee and having apprised himself of the provisions of former Rule 7.07(c), Izen, like Ruffalo, "had 'no reason even to suspect' ... that in [responding to the Committee's offer] he would be, by his own testimony, irrevocably assuring his [suspension] under charges not yet made." *Ruffalo*, 390 U.S. at 551 n. 4, 88 S.Ct. at 1226 n. 4. Nor had Izen any reason to suspect that, by coming within the sights of the Advertising Review Committee, his Brady Yellow Pages ad had set in motion a wide-ranging *sua sponte* State Bar investigation into all of his attorney advertising under all of its attorney advertising disciplinary rules, an investigation which, by the State Bar Advertising Review Committee's disregard of its own I.O.P.s, irrevocably assured the filing of disciplinary proceedings against him by the State Bar's Disciplinary Commission on charges of which he had been given no notice and which he had no opportunity to cure, either by attempting to comply—e.g., by disconnecting the Brady office's telephone and refusing business from the Yellow Pages ad (which he had done as a cautionary measure on failing to hear from the Committee)—or by filing a request for advisory review of all of his advertising, including his websites (one of which only sold legal books and forms) or filing a suit for a declaratory judgment on the State Bar's (unrevealed) determinations.

I would hold that by offering Izen the protections of former Rule 7.07(c) in exchange for the filing fee and late fees solicited and paid, and then by failing to follow its own I.O.P.s and extend to him the protections expressly set out in former

Rule 7.07(c) and the State Bar's Comments 4 and 5 to Rule 7.07, including the opportunity to cure, and by instead broadening its *sua sponte* investigation to all of Izen's advertising under all of the advertising rules on its own initiative and without notice to him and then filing and prosecuting disciplinary proceedings seeking the suspension of his license to practice law, the State Bar of Texas, through its Advertising Review Committee and Commission for Lawyer Discipline, plainly violated not only the Committee's own administrative procedures but also Izen's constitutional due process rights, rendering the Committee's and the Commission's interpretation and application of former Rule 7.07 to Izen unconstitutional under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article 1, section 19 of the Texas Constitution. *See Ruffalo*, 390 U.S. at 550–52, 88 S.Ct. at 1226 (holding that absence of fair notice as to reach of grievance procedure and precise nature of charges against him in state disbarment proceeding deprived attorney of procedural due process).

Indeed, the State Bar's interpretation and application of former Rule 7.07 to Izen calls into question not only the constitutionality of that rule under the Fourteenth Amendment and article 1, section 19, but also under the First Amendment. Upon the adoption of the Texas Supreme Court's Order of November 15, 1994, amending all of Part VII of the Disciplinary Rules of Professional Conduct, the amended Rules, including former Rules 7.01, 7.02, 7.04, and 7.07 at issue in this suit, were challenged in *Texans Against Censorship, Inc. v. State Bar of Texas*, 888 F.Supp. 1328 (E.D.Tex.1995). Each was held not to infringe the First Amendment's protection of commercial speech. *Id.* In addition, however, former Rule 7.07 was specifically challenged in that suit as violating the constitutional prohibition against prior re-

straint under the First Amendment. *See id.* at 1365–68.

The federal district court in *Texans Against Censorship* interpreted former Rule 7.07(c) as providing a safe harbor against the unconstitutional application of the advertising rules to attorneys—an interpretation directly opposite to that of the Advertising Review Committee and the Commission for Lawyer Discipline in this case—and it rested its conclusion that former Rule 7.07 did not violate the prohibition against prior restraint of free speech under the First Amendment solely on its interpretation of former section 7.07(c) as providing a safe harbor against unconstitutional prior restraint of speech by the State Bar. *See id.* at 1365–68. The State Bar's contrary interpretation of former Rule 7.07(c) in this case as *not* providing a safe harbor against State Bar disciplinary actions to suspend an attorney's license, and therefore as *not* requiring notice and an opportunity to cure before the filing of disciplinary action by the State Bar, thus not only calls into question the constitutionality of Rule 7.07 under the Fourteenth Amendment and article 1, section 19 of the Texas Constitution, but also calls into question the rationale upon which the federal district court held in *Texans Against Censorship* that former Rule 7.07 did not violate the First Amendment.

In reaching its conclusion that former Rule 7.07 did not place an unconstitutional prior restraint on commercial speech, the federal district court in *Texans Against Censorship* distinguished *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), as inapplicable, given the probable future interpretation of Rule 7.07(c) by the Texas State Bar Advertising Review Committee. In *Bantam Books,* the United States Supreme Court had held that the practices of a state commission charged with educating the public about obscene and indecent publications amounted to an unconstitutional system of informal censorship, and therefore a prohibited prior restraint on the constitutional right to freedom of commercial speech because, even though the commission had no power to prohibit book sellers or publishers from distributing books it found to be objectionable, it notified them that it had found certain publications objectionable, that a list of those publications had been provided to local law enforcement officials, and that cooperation from the distributor or publisher would obviate the need for prosecution, causing the publishers and distributors to remove the publications from circulation. *Texans Against Censorship,* 888 F.Supp. at 1367 (citing *Bantam Books,* 372 U.S. at 59–63, 83 S.Ct. at 633–35).

The district court in *Texans Against Censorship* pointed out that, in *Bantam Books,* the Supreme Court had stated, "Where such consultation is genuinely undertaken with the purpose of aiding the distributor to comply with such laws and avoid prosecution under them, it need not retard the full enjoyment of First Amendment Freedoms." *Id.* (citing *Bantam Books,* 372 U.S. at 72, 83 S.Ct. at 640). The district court then stated, with respect to its own review of former Rule 7.07(c) of the Texas Disciplinary Rules of Professional Conduct:

No evidence has been presented here to show even a likelihood that the Review Committee will include coercive or intimidating statements in its advance advisory opinions. On the contrary, amended rule 7.07(c) appears to contemplate that the Review Committee will simply determine whether an advertisement or solicitation communication submitted for an advance advisory opinion complies with the Texas rules, and state the reasons for such finding. It appears, then, that *the advance opinion*

*process is "genuinely undertaken with the purpose of aiding [lawyers] to comply" with the Texas rules, id.* at 72, 83 S.Ct. at 640, *and is thus not a prior restraint on speech.*

*Texans Against Censorship,* 888 F.Supp. at 1368 (emphasis added).

Unhappily, the federal court's benign prognostication of the way in which the State Bar of Texas's Advertising Review Committee and Commission for Lawyer Discipline would interpret and apply the provision in section 7.07(c) that the federal court interpreted as a safe harbor has not been borne out by events. True, the Committee and the Commission have not interpreted Rule 7.07 in a way that acts as a prior restraint on free speech. They have, instead, in this case, gone far beyond interpreting Rule 7.07 as permitting the Committee to notify an attorney in advance of publication that it finds an advertisement to be false and misleading and thus to restrain its publication. Rather, having solicited a fee for its review of the Brady Yellow Pages advertisement with the lure of a safe harbor, and without notice to Izen that it had determined that the publication violated the Disciplinary Rules of Professional Conduct in a number of ways, the Committee initiated *sua sponte* an investigation of all of Izen's advertising, seeking violations under all the advertising rules; it determined that a number of rules had been violated; and it decided not to follow its stated internal operating procedures and not to permit him an opportunity to cure any of the violations it had discovered. Instead, the Advertising Review Committee notified the *Commission* of its findings so that disciplinary proceedings could be initiated against him on all violations determined by the Committee to have occurred. These actions by the Committee and the initiation of disciplinary proceedings by the Committee denied Izen both fair notice as to the reach of the grievance procedure and the precise nature of the charges against him, and an opportunity to be heard and to cure any perceived violation or to question any such determination in declaratory judgment proceedings in advance of the State Bar's initiation of proceedings seeking the suspension of his license to practice law.

In its brief on appeal, the State expresses its understanding of Rule 7.07(c) as follows:

> In his first issue, Izen claims that his due process rights have been violated because he possessed a protected liberty and property interest in the informal resolution of his violations of the disciplinary rules. Izen bases his claim on a letter he received from the State Bar's Advertising Review Committee (ARC), a letter which he unreasonably interpreted as offering him the opportunity to avoid disciplinary action for multiple advertising violations by paying a $225.00 fee.
>
> Izen's first issue is without merit. Izen's interest in avoiding discipline did not constitute a legitimate claim of entitlement protected by the due process clause. At most, Izen possessed an expectancy that no formal action would be taken, and his expectancy resulted from his own misunderstanding of the disciplinary rules and the letter he received from ARC. His unreasonable expectation that, simply by paying a $225.00 fee, he could avoid disciplinary action no matter how egregious his violations did not constitute an interest protected by the constitution or other law.

The understanding of the purpose of former Rule 7.07(c) evinced by the Committee and the Commission in this case is the exact opposite of the federal district court's understanding of the purpose of former Rule 7.07(c) as providing a safe harbor from prosecution and therefore as preventing the unconstitutionality of the

Texas State Bar lawyer advertising rules, namely that Rule 7.07(c) offered "consultation ... genuinely undertaken with the purpose of aiding [lawyers] to comply with such laws and avoid prosecution under them." *Texans Against Censorship*, 888 F.Supp. at 1367 (quoting *Bantam Books*, 372 U.S. at 72, 83 S.Ct. at 640). It is also the exact opposite of the interpretation of the type of restriction of free speech that "need not retard the full enjoyment of First Amendment Freedoms." *Id.* It is the exact opposite of the way the United States Supreme Court interpreted the due process fair notice requirements of the Fourteenth Amendment in *Ruffalo*. And it is the exact opposite of the way I too would interpret former Rule 7.07(c) and its protections.

It is inconceivable to me that Texas Disciplinary Rule of Professional Conduct 7.07, as interpreted and applied in this case by the State Bar of Texas Advertising Review Committee and appellee the Commission for Lawyer Discipline could pass constitutional muster under either the Due Process Clause of the Fourteenth Amendment to the United States Constitution or article 1, section 19 of the Texas Constitution, and I would hold that it does not.

#### Conclusion

I would hold that former Texas Disciplinary Rule of Professional Conduct 7.07 was unconstitutionally applied to Izen in deprivation of his right to due process of law under the United States and Texas Constitutions and that this constitutional violation tainted all of the charges against him in this case. I would, therefore, vacate the judgment of the trial court and render judgment that the proceedings against Izen be dismissed.