**Opinion issued June 24, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00127-CV

———————————

**MARY F. MASTERSON, AS EXECUTOR FOR ESTATE OF JOHN C. MASTERSON, Appellant**

**V.**

**BCHH TITLE OF TEXAS, LLC AND ARVM 5, LLC, Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-10619**

---

## MEMORANDUM OPINION

This case arises from a failed real estate transaction involving a seller, buyer, assignee, and escrow agent. The seller sued the other parties to recover its earnest money. And the escrow agent counter-claimed for breach of a purported settlement agreement.

In this appeal, the seller now challenges the trial court's grant of summary judgment in favor of the escrow agent and the dismissal of its fraud and contract claims under Rule 91a against the assignee. We reverse and remand.

**Factual Background**

Mary F. Masterson, as executor of the estate of her father, John C. Masterson, entered into a Residential Family Contract to sell her father's home to "Julius Hardy, Jr. (And/or Assigns)."[1] Under the contract, Hardy was required to deliver $1,000 in earnest money to an escrow agent of his choosing. It was also agreed that upon any breach by Hardy, as the buyer, Hardy would forfeit his earnest money to Masterson. The contract did not include an option for early termination.

Before paying the earnest money, Hardy assigned all of his rights and obligations under the Residential Family Contract to ARVM5, LLC (Assignment Agreement). Masterson was listed as a party to the Assignment Agreement, but she did not actually sign it. Under the assignment, ARVM5 was required to pay $1,000 earnest money to the escrow agent, BCHH Title of Texas, LLC—which ARVM5 did. The Assignment Agreement also gave Hardy and ARVM5 five

---

[1]    The contract is a standard TREC "One to Four Family Residential Contract (Resale)."

2

business days of due diligence—during which time the earnest money would be fully refundable to ARVM5.

About two weeks later, Hardy and ARVM5 signed a Cancellation Agreement. It cancelled the assignment and instructed BCHH to release the earnest money to ARVM5.

Hardy and Masterson then signed a "Termination of Purchase Agreement"— waiving and releasing any claim against each other arising from the Residential Family Contract, or by reason of its termination, and agreeing that the $1,000 earnest money would be released to Masterson.

BCHH subsequently asked about the status of the fully executed termination and asked for Masterson's mailing address. Masterson notified BCHH of the termination and that it authorized payment of the earnest money to her. After waiting nearly a month, Masterson followed up with BCHH about the earnest money and stated that if she was forced to file suit, she would seek recovery of all her damages and attorney's fees.

After waiting another two weeks, and without any response from BCHH, Masterson sent a "formal demand and presentment of claims" letter to BCHH for breach of the "real estate contract terminated by buyer." Masterson asserted in the letter that she would "seek recovery of all damages allowed by law, including reasonable attorney's fees," if she was required to file suit.

After further attempts to get the earnest money from BCHH, Masterson filed suit against BCHH and Hardy in justice court.

Nearly three weeks after suit was filed, BCHH responded to Masterson's "formal demand and presentment of claims." BCHH stated that it agreed to Masterson's demand for payment of the $1,000 earnest money and $250 in legal fees. In return, BCHH requested that Masterson dismiss her suit in justice court, countersign BCHH's letter, and provide it with a copy of the motion to dismiss and the justice court's dismissal order. BCHH further stated that once it received the countersigned letter, a check for $1,250 would then be mailed to Masterson.

Masterson declined. Masterson replied that "the settlement amount is now $2,200 ($1,000 earnest money, $1,000 attorney's fees, $50 filing fee and $150 for two services of citation)"—and that once she received a cashier's check for that amount, she would dismiss the lawsuit. When BCHH did not agree, Masterson nonsuited her case in justice court and filed the current suit in district court.

**Procedural Background**

Masterson's live pleading in the trial court is her fifth amended petition. She alleged causes of action against BCHH for breach of fiduciary duties, violation of the Texas Deceptive Trade Practices Act,[2] money had and received, tortious interference with contract, and civil conspiracy. She also alleged causes of action

---

[2]    *See* TEX. BUS. & COM. CODE § 17.45.

4

against ARVM5 and Hardy for breach of contract, fraud, tortious interference with a contract, and civil conspiracy. Masterson further sought a declaratory judgment to determine the contractual rights of the parties.

BCHH filed a counterclaim against Masterson. BCHH alleged that it had entered into a settlement agreement with Masterson, which Masterson breached. Based on that contract claim, BCHH also sought attorney's fees.

BCHH moved for summary judgment on its counterclaim, which the trial court granted. The trial court awarded actual damages of $1,377.50 to BCHH and attorney's fees in the amount of $41,232.00, plus conditional appellate attorney's fees. The attorney's fees were assessed "against Masterson, as executor and [also] individually."[3]

ARVM5 moved to dismiss all of Masterson's causes of action against it under Rule 91a. TEX. R. CIV. P. 91a. The trial court granted that motion in part—dismissing Masterson's causes of actions against ARVM5 for breach of contract and fraud.

---

[3] The trial court also issued findings of fact and conclusions of law. It is well settled that findings of fact and conclusions of law have no place in a summary judgment proceeding. *See Cotton v. Ratholes, Inc.*, 699 S.W.2d 203, 204 (Tex. 1985) (court of appeals correctly disregarded trial court's findings of fact in summary judgment proceeding); *August v. Williams*, No. 01-00-00063-CV, 2002 WL 595079, at *1 (Tex. App.—Houston [1st Dist.] Apr. 18, 2002, no pet.) (mem. op.) ("Findings of fact and conclusions of law have no place in a summary judgment proceeding. . . . The trial court should not make, and an appellate court cannot consider, findings of fact in connection with a summary judgment.").

Masterson nonsuited her remaining claims against ARVM5 and all her claims against Hardy. The trial court subsequently granted Masterson's nonsuits which caused the trial court's summary judgment and Rule 91a dismissal order to dispose of all issues and all parties in the case. Masterson now appeals.[4]

## Summary Judgment

In her first issue, Masterson argues that the trial court erred in granting summary judgment for BCHH on its counterclaim for breach of a settlement agreement. We agree.

### A.  Standard of Review and Applicable Law

Appellate review of a summary judgment is de novo. *Sommers v. Sandcastle Homes*, 521 S.W.3d 749, 754 (Tex. 2017). A traditional motion for summary judgment is properly granted only when the movant establishes there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). We must take evidence favorable to the nonmovant as true and indulge every reasonable inference from the evidence in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

---

[4]  In seven issues, Masterson asserts that the trial court erred by (1) granting summary judgment for BCHH on its claim for breach of a settlement agreement; (2) dismissing her claims against BCHH; (3) awarding attorney's fees as damages to BCHH; (4) awarding BCHH relief not sought in its summary judgment motion; (5) dismissing her claims against appellee ARVM5; (6) awarding attorney's fees to BCHH; and (7) overruling her motions to modify the judgment.

6

When a defendant moves for traditional summary judgment it must either: (1) disprove at least one essential element of the plaintiff's cause of action or (2) conclusively establish each essential element of an affirmative defense. *Fallon v. Univ. of Tex. MD Anderson Cancer Ctr.*, 586 S.W.3d 37, 47 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

If the movant satisfies this burden, the burden then shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). However, if the movant fails to meet this burden, "the burden does not shift and the non-movant need not respond or present any evidence. *See Chavez v. Kansas City S. Ry. Co.*, 520 S.W.3d 898, 899–900 (Tex. 2017) (per curiam) (quoting *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014)).

## B.    Analysis

BCHH asserted in its motion for summary judgment that Masterson offered to settle this dispute in her "formal demand and presentment of claims letter" in exchange for BCHH's payment of the $1,000 earnest money and $250 in attorney's fees. BCHH accepted this offer in its response letter, and Masterson later breached their agreement by changing the terms and not performing.

Masterson's "formal demand and presentment of claims letter" to BCHH provides as follows:

We still have not received the earnest money owed under the contract after the buyer, Mr. Hardy, terminated the contract. This is our formal demand and presentment of claims.

This letter shall serve as the formal presentment of legal claims to the above[-]named persons in accordance with the Texas Civil Practices and Remedies Code, Sections 38.001 and 38.020, et seq. As a result of the breach, the seller is entitled to recover reasonable attorney's fees. The amount of attorney's fees thus far incurred is $250, demand for which is hereby made.

If forced to file a lawsuit in this matter, we will seek recovery of all damages allowed by law, including reasonable attorney's fees in accordance with section 38.001(8) of the Texas Civil Practices and Remedies Code, and section 17.50(c) and (d) of the Texas Business and Commerce Code, also known as the Texas Deceptive Trade Practices Act (DTPA).

BCHH's response letter to Masterson states:

In the interest of expediency, please be advised that BCHH Title of Texas, LLC agrees to your request for the demanded amount, being the $1,000 earnest money owed and the $250 in legal fees thus far incurred.

In return, we would request that you file the necessary motion to dismiss with prejudice Case No. 214100358422 in the Justice Court, Harris County, Texas, Precinct 4, Place 1.

So as to allow us to tender the demanded payment, I would ask that you please countersign this letter on the signature line provided below; in doing so, you agree to the payment of the $1,250.00 identified above as payment in full regarding this matter, and that you will file the necessary motion to dismiss the underlying case and return to my attention.

I would ask that you please provide a time stamped copies of the motion to dismiss and the Court's subsequent dismissal order.

8

> Once I receive the countersigned letter, a check in the amount of $1,250.00 will be mailed to your attention.

The elements of an enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent that it be mutual and binding on both parties; and (6) consideration. *Izen v. Comm'n for Lawyer Discipline*, 322 S.W.3d 308, 318 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

It is well settled that an acceptance must not change or qualify the terms of an offer, and if it does, the offer is rejected. *See United Concrete Pipe Corp. v. Spin–Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968); *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ). Acceptance must be identical with the offer in order to make a binding contract. *Gilbert*, 838 S.W.2d at 893. Where "negotiations" are in writing, the question of whether an offer was unconditionally accepted is primarily a matter of law for the court. *Id.* A material change in a proposed contract constitutes a counter-offer, which must be accepted by the other party. *Id.*

Likewise, a settlement agreement must contain all the essential terms of the settlement. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). For a

settlement agreement to be enforceable, it must be in writing, signed, and filed with the papers as part of the record, or made in open court and entered of record. *Id*. at 459 (citing TEX. R. CIV. P. 11). Further, the settlement agreement must be complete within itself in every material detail so that the agreement can be ascertained from the writing, or record, without resort to oral testimony. *Id*. at 460. Compliance with Rule 11 is a threshold requirement for enforceability. *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007).

Assuming arguendo that Masterson's "formal demand and presentment of claims letter" was an offer of settlement,[5] it included conditional language providing that if Masterson had to file suit—she would seek additional damages.[6] BCHH, who did not respond to Masterson's purported offer until after she filed suit, added an additional term to the purported offer. Namely, BCHH required

---

[5] "An offer 'must be reasonably definite in its terms and must sufficiently cover the essentials of the proposed transaction that, with an expression of assent, there will be a complete and definite agreement on all essential details.'" *Tauch v. Angel, Trustee for the Gobsmack Gift Trust*, 580 S.W.3d 808, 813 (Tex. App.—Houston [14th Dist.] 2019), *rev'd on other grounds*, 642 S.W.3d 481 (Tex. 2022).

[6] Generally, terms such as "if", "provided that", "on condition that" or similar phrases are necessary for determining if an offer is conditional. *See Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990).

Masterson to dismiss her pending lawsuit,[7] which necessarily involved foregoing all claims.

BCHH's response letter thus recognized that it had been sued and stated that BCHH would pay the requested amounts only if Masterson dismissed the pending suit. Because BCHH's response letter added an additional material term, it constituted a counteroffer. *See MKM Engineers, Inc. v. Guzder*, 476 S.W.3 770, 778 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Essential or material terms of a Rule 11 settlement agreement include payment terms and release of claims.") (citing *Padilla v. LaFrance*, 907 S.W.2d 454, 460–61 (Tex. 1995)).

Further, BCHH stated in its purported acceptance that if Masterson agreed, she should countersign BCHH's letter and "in doing so, you agree to the payment of the $1,250.00 identified above as payment in full regarding this matter, and that you will file the necessary motion to dismiss the underlying case and return to my attention." This language, acknowledging additional terms that Masterson would need to accept by her signature, further reflects that BCHH's purported acceptance was a counteroffer. *See Coleman v. Reich*, 417 S.W.3d 488, 493 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (fact issue raised as to whether response was acceptance or counteroffer when, among other things, purported acceptance letter

---

[7]  Masterson's suit in the justice court asserted claims for breach of contract, breach of fiduciary duty, violations of the Texas Deceptive Trade Practices Act and violations of the Texas Insurance Code.

11

included signature block to be signed by offeror to indicate offeror's acceptance, "presumably because offeree was extending a counter-offer").

It is undisputed that Masterson rejected BCHH's counteroffer and that Masterson then asked for additional expenses for having to file suit—which she stated that she would do in her "formal demand and presentment of claims letter"—and had the right to do.[8] *See Gilbert*, 838 S.W.2d at 893. Accordingly, we hold that the parties did not enter into a settlement agreement as a matter of law because BCHH's purported acceptance was an unaccepted counteroffer. The trial court therefore erred when it granted summary judgment in favor of BCHH and against Masterson.

We sustain Masterson's first issue.[9]

---

[8] Even in its summary judgment motion, BCHH admits that "Masterson failed to acknowledge and sign BCHH's acceptance letter."

[9] Masterson argues in her second issue that the trial court erred in dismissing her claims. When it moved for summary judgment on Masterson's claims, BCHH maintained that their purported settlement agreement precluded Masterson's claims as a matter of law. Because we have concluded that the parties did not enter into a settlement agreement—and BCHH's only summary judgment argument as to why the trial court should dismiss Masterson's claims was predicated on the existence of the purported settlement agreement—we likewise sustain Masterson's second issue. Because we have resolved Masterson's first and second issues in her favor, it is unnecessary to address Masterson's fourth and seventh issues. *See* TEX. R. APP. P. 47.1.

## Rule 91a Motion to Dismiss

In her fifth issue, Masterson argues that the trial court abused its discretion in granting ARVM5's Rule 91a motion, in part, and dismissing her causes of action against ARVM5 for breach of contract and for fraud.

### A.     Standard of Review and Applicable Law

Rule 91a allows a party to move for early dismissal of a cause of action on the ground that it has "no basis in law or fact." *See Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C*., 595 S.W.3d 651, 654 (Tex. 2020) (quoting TEX. R. CIV. P. 91a.1).  A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. *Id*; TEX. R. CIV. P. 91a.1.

Courts have recognized that a cause of action has no basis in law under Rule 91a in at least two situations: (1) where the plaintiff fails to plead a viable, legally cognizable cause of action and (2) where the allegations in the plaintiff's own pleading establish a legal bar to the relief requested. *Kadyebo v. Centennial Ct*., No. 01-23-00760-CV, 2024 WL 3891865, at *2 (Tex. App.—Houston [1st Dist.] Aug. 22, 2024, no pet.) (mem. op.); *see also Texas Dep't of Ins. v. Stonewater Roofing, Ltd. Co.*, 696 S.W.3d 646, 653 (Tex. 2024).  A cause of action has no basis in fact if "no reasonable person could believe the facts pleaded." TEX. R. CIV. P. 91a.

Whether a defendant is entitled to dismissal under Rule 91a is a legal question that we review de novo. *See Texas Dep't of Ins.*, 696 S.W.3d at 653. In conducting our review, we may not consider any evidence and must make our determination based solely on the plaintiff's live pleadings, together with any pleading exhibits permitted by Rule 59.[10] *See Kadyebo*, 2024 WL 3891865, at *3; TEX. R. CIV. P. 91a.1. Additionally, we must construe the pleadings liberally in favor of the claimant, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if a cause of action has a basis in law or fact. *See Malik v. GEICO Advantage Ins. Co.*, No. 01-19-00489-CV, 2021 WL 1414275, at *4 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (mem. op.).

## B. Analysis

Based on these principles, we must determine whether Masterson's live pleading (her fifth amended petition) alleges a viable, legally cognizable claim against ARVM5 for breach of contract or for fraud—and whether Masterson's pleading establishes a legal bar to the relief requested.

---

[10] Rule 59 provides, "Notes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings by copies thereof . . . shall be deemed a part thereof for all purposes." TEX. R. CIV. P. 59. Here, Masterson attached copies of the Residential Family Contract, the Assignment Agreement, the Cancellation Agreement, and the Termination Agreement to her fifth amended petition as exhibits.

Masterson pleaded that Hardy assigned his rights under the Residential Family Contract to ARVM5. And that ARVM5 subsequently cancelled the assignment and specified that the earnest money would be returned to ARVM5 —with no mention of Masterson. Masterson further pleaded that ARVM5 "failed and refused to deliver to BCHH a release authorizing BCHH to pay the earnest money to [Masterson]." And that by cancelling the assignment, ARVM5 "committed an anticipatory repudiation and material breach of the Assignment and the Contract."

Masterson further pleaded that "by executing the Cancellation and terminating the [Residential Family] Contract, [ARVM5] engaged in a fraudulent scheme to breach the Assignment and the [Residential Family] Contract and retain the earnest money." That "ARVM5 committed fraud by signing the Assignment without any intention of performing it or the [Residential Family] Contract." And by failing and refusing to notify Masterson of the Assignment and the Cancellation, "ARVM5 committed fraud by nondisclosure."

1. *Breach of Contract*

ARVM5 argued in its Rule 91a motion that Masterson's breach of contract claim has no basis in law because it had no contract with Masterson.[11] ARVM5

---

[11] ARVM5's Rule 91a motion to dismiss is based on Masterson's fourth amended petition. Masterson filed her fifth amended petition four days after the 91a motion was filed—and more than twenty-one days before the motion was heard. *See* TEX.

further asserted that when the Assignment Agreement terminated, that released ARVM5 from any obligation under the Residential Family Contract. Stated differently, ARVM5 maintained that it had no privity of contract with Masterson.[12]

Generally, "the benefits and burdens of a contract belong only to the contracting parties, and 'no person can sue upon a contract except he be a party to or in privity with it.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (citation omitted). Privity is established by proof that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill. L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied).

An assignee is not liable under another party's contract without an express or implied assumption of the contract's obligations. *Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1996, writ denied). To assume a contractual obligation, there must be promissory words or words of

---

R. Civ. P. 91a.3 In both amended petitions, Masterson pleaded the same cause of action for breach of contract against ARVM5.

[12] ARVM5 also makes new arguments on appeal about why Masterson's claims purportedly have no basis in law or fact. But because those arguments were not first presented to the trial court in ARVM5's Rule 91a motion, they are not properly before us. *See* TEX. R. CIV. P. 91a.2 (requiring movant to specify reasons why cause of action has no basis in law or fact); *Mendoza v. Milkshake, LLC*, No. 05-22-01018-CV, 2023 WL 4446339, at *3 (Tex. App.—Dallas July 11, 2023, no pet.) (mem. op.) (declining to address appellant's additional Rule 91a grounds for dismissal that were not presented to trial court).

assumption on behalf of the assignee. *Id.* (citing 4 A. Corbin, Corbin on Contracts § 906, at 632 n.1).

ARVM5 is correct that Masterson contracted with Hardy. But Hardy subsequently assigned that real estate contract to ARVM5. That Assignment Agreement is attached to Masterson's live pleading and states: "Assignor hereby conveys, transfers, and assigns all its rights and obligations under the Contract to the Assignee in consideration of the payment of an Assignment Fee by Assignee to Assignor at closing." Under the plain language of this assignment, ARVM5 stepped into Hardy's shoes—thus establishing privity of contract between ARVM5 and Masterson. *See 718 Assoc., Ltd. v. Sunwest N.O.P., Inc.*, 1 S.W.3d 355, 361 (Tex. App.—Waco 1999, pet. denied) ("When the assignor conveys its entire interest, without retaining any reversionary interest, the assignee becomes a tenant in place of the original lessee and is in privity of estate and contract with the lessor."); *see also Clayton Williams Energy, Inc. v. BMT O & G TX, L.P.*, 473 S.W.3d 341, 353 (Tex. App.—El Paso 2015, pet. denied) ("[I]t is axiomatic that when an assignee receives a transfer of rights under a contract, the assignee steps into the assignor's shoes for purposes of that contract.").[13]

---

[13] ARVM5 also argues that its cancellation of the assignment acts to preclude any liability on Masterson's breach of contract claim. This constitutes an affirmative defense. *See, e.g.*, *Smartt v. State*, No. 14-20-00110-CV, 2021 WL 1537459, at *2 (Tex. App.—Houston [14th Dist.] Apr. 20, 2021, no pet.) (mem. op.). In deciding a Rule 91a motion, a court may consider the defendant's pleadings in order to

17

Masterson further pleaded that she was a third-party beneficiary of the assignment between Hardy and ARVM5. If noncontracting parties qualify as third-party beneficiaries, they may sue for breach of the contract. *Brumitt*, 519 S.W.3d at 102; *see City of Alton v. Sharyland Water Supply Corp*., 145 S.W.3d 673, 682 (Tex. App.—Corpus Christi 2004, no pet.) ("Third-party beneficiaries to a contract acquire the same rights and standing to enforce the contract as those held by one of the contracting parties."). ARVM5's motion to dismiss did not dispute or address Masterson's status as a third-party beneficiary of the assignment.

Construing Masterson's live pleading liberally in her favor, and accepting as true the factual allegations in her pleading, we cannot conclude, at this stage, that Masterson lacked privity with ARVM5—either due to ARVM5's status as an assignee or Masterson's status as a third-party beneficiary of the assignment. Accordingly, we hold that Masterson pleaded a viable, legally cognizable claim

---

make the legal determination of whether an affirmative defense is properly before the court. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020). If it is, only an affirmative defense that is "conclusively established by the facts in the plaintiff's petition" can support a dismissal under Rule 91a. *Id.* An affirmative defense that requires consideration of evidence is not a proper basis for dismissal under Rule 91a. *Id*; *see Burns v. EMD Supply Inc*., No. 01-22-00929-CV, 2024 WL 1558720, at *5 (Tex. App.—Houston [1st Dist.] Apr. 11, 2024, no pet.) (mem. op.). Here, ARVM5 filed a bare-bones general denial to Masterson's fourth amended petition. It did not assert any affirmative defenses and thus never pleaded the affirmative defense of cancellation. As a result, ARVM5's cancellation argument is beyond the scope of our Rule 91a review. *See* TEX. R. CIV. P. 94; *Bethel*, 595 S.W.3d at 656.

against ARVM5 for breach of contract. The trial court thus erred in dismissing Masterson's breach of contract claim under Rule 91a.

### 2. *Fraud by Nondisclosure*

Masterson also pleaded in her fifth amended petition that ARVM5 committed statutory fraud, fraudulent inducement, common law fraud, and fraud by omission or nondisclosure.

On appeal, Masterson only challenges the dismissal of her cause of action for fraud by omission or nondisclosure. She asserts that "[b]y act and omission, through their failure and refusal to notify Masterson of the Assignment and the Cancellation, together with the promise to release the earnest money to Masterson, Hardy and ARVM5 fraudulently induced Masterson to sign the Termination that Hardy prepared."

To establish fraud by omission or nondisclosure, a plaintiff must show that the defendant failed to disclose material facts, the defendant had a duty to disclose such facts to the plaintiff, the plaintiff was ignorant of the facts and did not have an equal opportunity to discover such facts, the defendant intended the plaintiff to act or refrain from acting based on its disclosure, and the plaintiff relied on the omission or nondisclosure resulting in injury. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019).

As referenced above, ARVM5's Rule 91a motion is based on Masterson's fourth amended petition, which is not her live pleading. Masterson's fifth amended petition added fraud by omission or nondisclosure as a new cause of action.[14] *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) (recognizing fraud by nondisclosure as a subcategory of fraud). ARVM5 did not amend its 91a motion to challenge the new fraud cause of action. *See* TEX. R. CIV. P. 91a.5(c).

Yet, when the trial court dismissed all of Masterson's fraud causes of action under Rule 91a—it also dismissed Masterson's unchallenged cause of action for fraud by omission or nondisclosure. By doing so, the trial court erred. The trial court had no basis under Rule 91a to dismiss Masterson's unchallenged cause of action for fraud by omission or nondisclosure. *See* TEX. R. CIV. P. 91a.2 ("A motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both."); *Medfin Manager, LLC v. Stone*, 613 S.W.3d 624, 631 (Tex. App.—San Antonio 2020, no pet.);

---

[14] "[A] plaintiff's timely filed amended pleading supersedes all previous pleadings and becomes the controlling petition in the case regarding theories of recovery." *Encore Enters., Inc. v. Borderplex Realty Tr.*, 581 S.W.3d 347, 362 (Tex. App.—El Paso 2018, no pet.) (quoting *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 793 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)). Because Masterson's fifth amended petition was timely filed and superseded the fourth amended petition, the trial court could only consider Masterson's fifth amended petition as the live pleading in ruling on the motion to dismiss. *See* TEX. R. CIV. P. 65 (stating amended instrument replaces original instrument).

*Parker v. Ohio Dev., LLC*, No. 04-23-00069-CV, 2024 WL 1864756, at \*4 (Tex. App.—San Antonio Apr. 30, 2024, pet. denied) (mem. op.) (holding that because defendant did not seek dismissal of civil conspiracy claim, trial court erred in dismissing claim).

Consequently, for all of these reasons we hold that the trial court erred in granting, in part, ARVM5's 91a motion and dismissing Masterson's causes of action against ARVM5 for breach of contract and for fraud by omission or nondisclosure. We sustain Masterson's fifth issue.

**Attorney's Fees**

In her third and sixth issues, Masterson argues that the trial court erred in awarding attorney's fees to BCHH. Because we are reversing the trial court's summary judgment for BCHH on its breach of contract claim against Masterson, there is no basis for any award of attorney's fees to BCHH. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (to recover attorney's fees under section 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages."); *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 612 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (reversing and remanding award of attorney's fees because portion of summary judgment had been reversed on appeal and party was no longer prevailing party).

As a result we must also sustain Masterson's third and sixth issues and reverse the award of attorney's fees to BCHH.[15]

## Conclusion

Based on the record before us, we reverse the trial court's summary judgment in favor of BCHH in all things. And we reverse the corresponding award of attorney's fees to BCHH. We further reverse the trial court's Rule 91a dismissal of Masterson's causes of action against ARVM5 for breach of contract and for fraud by omission or nondisclosure.

We remand the case for further proceedings consistent with this opinion.


Terry Adams
Chief Justice


Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

---

[15] Because we hold that there is no basis for any award of attorney's fees to BCHH in this case, it is not necessary to the final disposition of this appeal for us to address whether the trial court erred in also assessing the attorney fee award against Masterson in her individual capacity. *See* TEX. R. APP. P. 47.1.